STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

PEOPLE OF THE STATE OF MICHIGAN,

                        -vs-                        Case No. 01-013853

                                             Hon. Thomas E. Jackson

JAMES ALFRED JONES,

        Defendant.

_____/

EVIDENTIARY HEARING

        PROCEEDINGS HAD AND TESTIMONY taken in the above-entitled cause before the HONORABLE THOMAS E. JACKSON, Judge, Criminal Division, Third Judicial Circuit Court, Courtroom G-1, Frank Murphy Hall of Justice, 1441 St. Antoine, Detroit, Michigan, on Friday, April 5, 2002.

    APPEARANCES:

                MR. WILLIAM A. ROLLSTIN, (P40771),
                    Assistant Wayne County Prosecutor,
                    On behalf of the People of the State of Michigan.

                MS. LEESA R. FREDERICK, (P53372),
                    On behalf of Defendant James Alfred Jones.

        —   —   —

                CLARA SHAH, CSR-2602
                OFFICIAL COURT REPORTER

I   N   D   E   X

WITNESS                                                      PAGE

EDWARD MARTIN

        Direct Examination by Mr. Rollstin          4

        Cross-examination by Ms. Frederick          8

        Redirect Examination by Mr. Rollstin       13

ARGUMENTS

        By Ms. Frederick                            16

        By Mr. Rollstin                             21

REBUTTAL ARGUMENT By Ms. Frederick                  22

COURT'S DECISION                                    24


E   X   H   I   B   I   T   S

IDENTIFICATION                          MARKED      RECEIVED


N   O   N   E

1    Friday, April 5, 2002

2    Detroit, Michigan

3    At about 1:50 p.m.

4    &mdash;   &mdash;   &mdash;

5    THE CLERK: Case No. 01-13853, People versus James Jones.

6    MR. ROLLSTIN: William Rollstin, on behalf of the People.

7    MS. FREDERICK: Leesa Frederick, on behalf of Mr. Jones.

8    THE COURT: Mr. Jones is being brought out.

9    I assume this is a continuation of an evidentiary hearing.

10   There was some other testimony to be heard, I believe. And there

11   was, also, the prosecution was going to bring in the witnesses in

12   this case, also.

13   MR. ROLLSTIN: Yes, Judge. There is three witnesses that

14   were requested. We have got two of them here. The individual who

15   made the identification is here and we are ready to go.

16   THE COURT: Ms. Frederick, anything we want to say before

17   we proceed with the taking of the tesimony?

18   MS. FREDERICK: Your Honor, the defense is presently

19   satisfied with the testimony taken on I believe the 8th of February

20   -- I am not exactly sure. Let me double check. Yes, I am sorry,

21   March 8th, Judge. So, I guess at this point, defense would be

22   resting.

23   THE COURT: Okay. I guess one of the -- just to make

24   the entire record here, obviously, even if there were some issue

25   of suggestion of any identification, the prosecution has the right

-3-

1    and privilege to show some independent basis for that.  So, let's

2    just make the entire record and then proceed after that, okay.

3            MR. ROLLSTIN:  I am only going to call one more witness

4    then, Judge.

5            THE COURT:  Very well.  Do that then.

6            MS. FREDERICK:  Your Honor, I would like to make

7    a motion for sequestration.

8            THE COURT:  If you are to be a witness in this case

9    and not being called at this moment, wait outside until you are

10   called in to testify and we will do that.

11           E D W A R D    M A R T I N    ,

12   **having been first duly sworn by the Clerk at 1:54 p.m., was examined**

13   **and testified as follows:**

14           DIRECT EXAMINATION

15   BY MR. ROLLSTIN:

16   Q    Tell us your name, please?

17   A    Edward Martin.

18   Q    Mr. Martin, how old are you today?

19   A    18.

20   Q    Do you know Mr. James Jones?

21   A    Yes.

22   Q    Do you know him as Mr. James Jones?

23   A    Yes.

24   Q    Do you see him in the courtroom today?

25   A    Yes.

-4-

LASER STOCK FORM FMSRN

THE CORBY GROUP  1-800-255-5040

1  Q     Point him out here?

2  A     Yes.

3  Q     Gentleman here in front of you?

4  A     Yes.

5              THE COURT:  Pull the microphone up to your face so

6        we can hear you.

7  A     Yes.

8              MR. ROLLSTIN:  Identified for the record, Your Honor,

9        Mr. Jones.

10 BY MR. ROLLSTIN:

11 Q     Prior to the 15th of November of 2001, were you familiar with

12       Mr. Jones?

13 A     Yes.

14 Q     How is it that you happen to know him?

15 A     Through Demetris and them.

16 Q     When you say, Demetris, are you talking about Demetris Perdue?

17 A     Yes.

18 Q     And during his lifetime, was Demetris Perdue somebody that you

19       knew?

20 A     Yes.

21 Q     And as of November of 2001, how long had you been familiar with

22       Mr. Jones?

23 A     I had seen him off and on through the neighborhood a lot.  I

24       probably knew of him probably about a year.

25 Q     All right.  Had you ever spent time with him socially?

                              -5-

1   A      Yes, we probably smoked a blunt or something together.

2                  THE COURT:   What is a blunt?

3   A      A cigar.

4                  MR. ROLLSTIN:   Okay, thank you for clarifying that,

5          Judge.

6   BY MR. ROLLSTIN:

7   Q      Did you know him by any names or nicknames?

8   A      Fresh.

9   Q      All right.  Were you present during a shooting on the 15th of

10         November of 2001 when Mr. Perdue was killed?

11  A      Yes, sir.

12  Q      All right.  Did you see Mr. Jones in the area during that

13         shooting?

14  A      Yes, sir.

15  Q      All right.  What was he doing during that shooting?

16  A      Driving the car.

17  Q      All right.  Where was the person who did the shooting at?

18  A      In the back seat.

19  Q      Okay.  After that shooting, did you meet with -- did you meet with

20         Police Officer JoAnn Miller who sits in front of me here?

21  A      Yes.

22  Q      All right.

23                 And did she come to you with a photograph?

24  A      Yes, sir.

25  Q      I am going to show you what has been marked as Exhibit No. 2,

                                    -6-

1   this photograph here.  Is this what you were shown when she

2   came to you?

3   A   Yes, sir.

4   Q   And did you recognize the person in this photograph?

5   A   Yes, sir.

6   Q   And did you tell her that?

7   A   Yes, sir.

8   Q   And did you identify this person as being the driver of the

9   car that the shooter was in?

10  A   Yes, sir.

11  Q   Okay.  Did you also attend a lineup on the 18th of November of

12  2001?

13  A   Yes, sir.

14  Q   And did you pick somebody out of that lineup?

15  A   Yes, sir.

16  Q   Who was that?

17  A   Fresh.

18  Q   All right.  You are referring to Mr. Jones in the courtroom here?

19  A   Yes.

20  Q   All right.

21          MR. ROLLSTIN:  No further questions.

22          THE COURT:  What was it, Fresh?

23          MR. ROLLSTIN:  Fresh, F-r-e-s-h, I believe, Judge.

24          THE COURT:  Go ahead, please.

25          MS. FREDERICK:  Thank you, Judge.

-7-

1                          CROSS—EXAMINATION

2    BY MS. FREDERICK:

3    Q      Your name is Edward Martin?

4    A      Yes.

5    Q      Do you also go by the name of Edward Newman?

6    A      Yes, sir, ma'am.

7    Q      Which of them is your given name?

8    A      Martin.

9    Q      Okay.  And where do you get the name, Edward Newman?

10   A      I have my father's name, but once they got divorced or whatever,

11           I just took my mom's last name too with the rest of the kids.

12   Q      Now, do you recall the date that Investigator Miller showed you

13           the photograph?

14   A      It was the day after the shooting.

15   Q      It was the day, when?

16   A      After the shooting.

17   Q      And do you know the day of the shooting?

18   A      November 15th.

19   Q      So she showed you on the 16th?

20   A      Yes, it was one of those days.

21   Q      It was one of those days.  so, you are not sure which day you

22           saw the picture?

23   A      To my knowledge, ma'am, it was the day after the shooting.  That

24           is when s h e came with the picture.

25   Q      Okay, and where did she come with the picture?

-8-

LASER STOCK FORM FMSRN

THE CORBY GROUP 1-800-255-5040

1   A   To Joseph McCirmon's house.

2   Q   Okay.  And who else was present?

3   A   Me, Joseph, and a couple more guys out there on the porch

4       when they pulled up.

5   Q   Was Phillip Mason present?

6   A   Not to my knowledge.  He might have been on the porch, but the

7       person that was there with me when they asked us did we know

8       this guy was Joseph.  That was the person that said he knew

9       the guy, too, on the picture.  So --

10  Q   Okay.  Now, the incident occurred on the 15th of November,

11      correct?

12  A   Yes.

13  Q   You didn't make a statement to the police until the 16th of

14      November, correct?

15  A   No.  After the shooting was over and all, the police came on

16      the block.  I had told them who ID it and who I seen driving the

17      car or whatever.  And then the next day, that is when they came

18      with the picture.

19  Q   Okay.  When did you sit down and make out a statement that you

20      signed as your statement of the facts?

21  A   Later on that night after the shooting.

22  Q   So, you did that on the 15th?

23  A   Yes.

24  Q   Do you recall what time of night that was?

25  A   I couldn't remember.  Probably, about, eight o'clock.

-9-

LASER STOCK FORM FMSRN

THE CORBY GROUP  1-800-255-5040

Q    8 p.m., and did you make that statement at the Homicide Headquarters

or didyou make it at the Precinct, the 8th Precinct?

A    No.   They took my statement and all of that down out there where

the shooting and stuff took place at.

Q    Okay.   Do you recall the name of the author that took that

statement?

A    No, ma'am.

Q    Okay.

Now, I am going to get back to the photograph.   You

stated that the sheet of paper with the photographs printed on it

is the actual picture that she showed you?

A    Yes.

Q    And that Mr. Joseph McCirmon was present, correct?

A    Yes.

Q    And possibly Mr. Phillip Mason, also?

A    Yes.

Q    And some other people?

A    Yes.

Q    Okay. And this occurred on the 16th.   Did you have the

opportunity to see any other photographs at that time?

A    No, ma'am.

Q    Okay.   Now, you stated that you knew of Mr. Jones from your

neighborhood, is that correct?

A    Yes, ma'am.

Q    Okay.   And so why was it necessary for you to see a photograph?

-10-

LASER STOCK FORM FMSRN

THE CORBY GROUP  1-800-255-5040

1    A    Because they just wanted to make sure they had the right person.

2    Q    Okay.  Now, on the date of the lineup, did Mr. -- I am sorry,

3         did Police Officer Miller pick the three of you witnesses up

4         in the same vehicle?

5    A    Yes, ma'am.

6    Q    Did she referesh your memory by showing you the picture, again?

7    A    Well, I can't remember all that.  I just know that was him on

8         that picture who I seen.  And I know who I picked out in that

9         lineup.  That is the man right there.

10   Q    I understand.  You were the second individual to go into the

11        room to view the lineup, weren't you?

12   A    I don't know.  I can't remember.  I was the first or the second

13        person.

14   Q    And when you left, did you advise Mr. McCirmon which number or

15        which person to pick?

16   A    No.

17   Q    Okay.  So, if he said that, he would have been lying?

18   A    Yes.

19   Q    Okay.  When you saw Mr. Jones in the lineup, what, if you remember,

20        what was he wearing?

21   A    I think a white T-shirt.

22   Q    Okay.  And do you recall any of the other individuals in the

23        lineup?

24   A    No.  He is the only person I knew in the lineup.

25   Q    Okay.  Okay.  And you said when you walked in that you identified

-11-

1        Mr. Jones, correct?

2    A   Yes, ma'am.

3    Q   Okay. As the individual doing what?

4    A   Driving the car.

5    Q   Okay. And what car was this?

6    A   A green Aurora.

7    Q   And you testified at the preliminary examination as to this issue,

8        correct?

9    A   Can you repeat that?

10   Q   You testified at the preliminary examination as to Mr. Jones being

11       the driver of this car?

12   A   Yes, ma'am.

13   Q   Okay. Have you had an opportunity to review the statements and

14       other information as to this case?

15   A   Yes, I looked over them.

16   Q   And when did you do that?

17   A   About a couple of minutes ago.

18   Q   Okay. And were you given any advice as to what you should be

19       saying and how you should answer these questions?

20   A   No.

21   Q   Okay, you weren't. Okay, what time did Ofr. Miller pick you

22       up today?

23   A   About 45 minutes ago to an hour.

24   Q   Okay, and you were served a subpoena to appear on -- excuse me,

25       on the 8th of March, correct?

                                  -12-

1   A     No, ma'am.

2   Q     Okay.  Did you send a word to court or make a call down here on

3         that date saying that you were out of town?

4   A     I called down here after my momma, they showed me the subpoena.

5         I did not sign for that subpoena.  And it was not given to --

6         directly to me.

7   Q     I understand.

8   A     They gave it to me the day after I got in from out of town and

9         it was supposed to be this court date.  That is when I called up

10        here.

11  Q     I see, and you were also served with another subpoena from the

12        prosecution, correct?

13  A     Just today.

14  Q     Just today, okay.

15                  MS. FREDERICK:  Nothing further, Judge.

16                  THE COURT:  Redirect?

17                  REDIRECT EXAMINATION

18  BY MR. ROLLSTIN:

19  Q     The subpoena you received today was for a May 20th trial date,

20        correct?

21  A     Yes.

22                  MR. ROLLSTIN:  Okay, nothing else.

23                  THE COURT:  Your last name is Martin?

24  A     Yes.

25                  THE COURT:  Mr. Martin, at the lineup, when you

                    -13-

1       identified the -- you say you picked out the defendant, right?

2  A   Yes.

3          THE COURT: What did you base that on in terms of

4   picking him out, what did you base that on?

5  A   (No response.)

6          THE COURT: Understand my question?

7  A   No.

8          THE COURT: In terms of what, did you base it on what

9  you saw there that happened on the date of this thing that

10  occurred or did you base it on something the officer said

11  to you being on the photograph, something she said to you, a

12  combination with the photograph. When you looked up there

13  and you saw that person, who did you see at that time?

14  A   Fresh.

15          THE COURT: And for what reason, based on what?

16  A   Driving that car that killed my friend out there.

17          THE COURT: Okay. I just wanted to know. We have to

18  make the proper record on here. That is why I need to ask.

19          Anything else?

20          MR. ROLLSTIN: No, thank you, Judge.

21          THE COURT: You may stand down now, okay.

22          (Witness excused at 2:05 p.m.)

23          MR. ROLLSTIN: That is the only witness I intend

24  to call, Judge. Thank you.

25          THE COURT: I was trying to remember from my notes

LASER STOCK FORM FMSRN

THE CORBY GROUP 1-800-255-5040

here.  There was allegedly -- I was trying to understand if there was someone else who may have seen the photograph.  If I remember correctly, it was only Martin who saw the photograph.

MS. FREDERICK:  Judge, if I can answer that, the show attorney verified through his notes that the individual that did happen to bear out that the photograph had in fact been shown was Joseph McCirmon.  And he made the comment that that is the one whose picture she just showed us.  I attached that to the motion.  That was subsequently testimony taken.

THE COURT:  All right.  So, if I understand, I have to kind of put this all back into prospective again.  What you were suggesting or saying is that this was an improper identification or suggestion because of the photograph having been shown to these persons that it was based on that and the other issue here was whether or not, of course, there would be a possible independent basis for that.

See, it has been about a month now since we had this and I was trying to remember all of the things that we talked about, okay.  All right.  So, the only other person allegedly who may have seen the photograph would have been Mr. McCirmon.

MS. FREDERICK:  No, Judge. In fact, during cross-examination, Ofr. Miller noted that she showed it to Edward Martin and Phillip Mason.  I was unaware and had not been able to confirm that Phillip Mason had in fact seen the photograph as well.

-15-

1    And as I stated during cross, she did in fact say

2  that she showed it to Edward Martin and Phillip Mason, and I

3  have the transcript here.

4    THE COURT: Okay. I guess what it comes back to the same

5  concern here in terms of the argument that is being made and the

6  issue, Mr. Rollstin, about your record about any independent

7  basis on this.

8    Now, I can -- let me put it this way. Are there any

9  other testimony at this time as to that issue because certainly,

10  the issue is right for ruling as to the witness that just got

11  on the witness stand if that is what we are talking about

12  and then it comes back, I guess, to the other persons as to

13  whether or not. I guess I have to decide whether there was

14  a suggestive lineup and if it was influenced in some way by

15  the police and then if so, then the prosecution can establish

16  an independent basis for that.

17    So, I guess we can get to the initial part of this

18  as to whether or not there was in fact something suggested

19  done by the police. Is that where we are now?

20    MS. FREDERICK: Yes, Judge.

21    THE COURT: You may proceed with that now.

22    MS. FREDERICK: Thank you.

23    On November 17th, Your Honor, Mr. Jones was asked

24  -- I'm sorry, prior to November 17th, Mr. Jones was asked to

25  appear at the 8th Precinct on the 17th at 1 p.m. for the purpose

-16-

of viewing a lineup with respect to a robbery incident that

occurred.  When he arrived there, he was taken into custody.

I was not made aware of the charges.  I was not given

any information.  Following that detention, I learned that

there had been a homicide and that somehow someone in Homicide

authorized or requested that he be detained.  Went to Homicide,

found out that there was in fact an investigation going on

and that Mr. Jones may be involved somehow.

After talking further to Investigator Miller or

Investigator -- I don't know which person at the time was

the officer in charge, I found that they were still investigating.

He had not been formally arrested nor had there been a warrant

issued.  Subsequently, I went and got a writ of habeas corpus.

They were ordered to have him arraigned immediately.

That occurred vis-a-vis a drug case.  There still

was not a warrant produced or an affidavit or anything of

that matter -- for that matter with regards to the homicide

charge.  He was arraigned on a capias for a drug case and

then it seemed to me, and I did in fact object that the homicide

charges were just thrown hin.

THE COURT:  Ms. Frederick, what are we talking about?

I thought we had a motion here about the issue of identification.

MS. FREDERICK:  I am trying to give you a background

as to why there is an issue of identification.  There was no one

at the time to ID him.  He was in custody at the time these

-17-

1   pictures were shown which means that at that time he had a right

2   to counsel. Police Officer Miller knew I was there. She knew

3   I was over at Homicide. I was waiting to find out what exactly

4   was going on. When his pictures were shown, he was represented

5   by counsel. I was not made privy to the time or date that they

6   wanted to do a photo array. And, in fact, it did not consist of

7   a photo array. It was one photograph shown. And Investigator

8   Miller did in fact concede that during cross-examination.

9         That would be unduly suggestive in light of the

10  circumstances. Additionally, if I were to -- if I could,

11  Your Honor, speak to the fact that the photograph is dated

12  for the 4th of September, 2001. Mr. Jones had not had any contact

13  whatsoever and so, even that is suspicious because he was not,

14  there is no --

15        THE COURT: I am sorry, I missed your point on that.

16        MS. FREDERICK: I am trying to bring up some issues of

17  credibility, Judge. The picture is dated for the 4th of September,

18  supposedly taken, and that is what she stated it was taken on the

19  4th of September. He was on probation to you. You have not seen

20  him. There is no violation. He had no contact. So, even the

21  photograph itself is suspect.

22        THE COURT: Why? I am missing your point about the

23  photograph.

24        MS. FREDERICK: My point is -- I am sorry.

25        THE COURT: What is it about the photograph that is

                                -18-

1    suspect?

2         MS. FREDERICK:   The fact that we were told during

3    cross-examination of Detective Miller that the photograph was

4    taken on September 4th and that is not the case, Judge.   That

5    is all I am simply saying.

6         In addition, like I said, the fact it was a solitary

7    photograph is unduly suggestive as noted in my motion.   To go

8    further, to show it to them prior to the lineup, just prior to

9    the lineup as Mr. Martin has somewhat tried not to note.   That

10   he did in fact see the photograph again just before the lineup.

11   Mr. McCirmon's statement bears that out as well and conveniently,

12   he is not here.

13        He is the individual who told us in front of the lineup

14   attorney that, yes, she just showed us his picture and the guy

15   that just left out which was number two, Mr. Martin, said he

16   was driving.   So, I don't think that they were ever trying to

17   find out if in fact this individual was the driver.   I think that

18   basically there was a determination that he was and they were

19   going to decide a way to make it happen and make it fit.

20        So, the subsequent independent basis, you know, I find

21   that to be suspect.   All of a sudden, he knows him.   He knows

22   this guy now.   Well, he needs to know him because that creates

23   the independent basis.   He didn't know him prior to.   And if he

24   did, it wouldn't be necessary to show just one picture if he knew

25   him.   They could have created a photo lineup.   They could have

                              -19-

called me because I was there and they could have let him pick

him out fair and square, but that is not what happened, Judge.

What happened was one photograph was shown. And, of

course, just before the lineup, that makes it even easier to pick

him out, not to mention the fact that he is the only individual

in the lineup not wearing a jacket. He is the only individual

in the lineup with his hair in braids. Everyone else is close-cut

and clean shaven.

And so the suggestiveness started with the photograph

and then it continued on through the actual lineup. He is the

centerpiece of the lineup, number three of five and he is wearing

a white T-shirt, the same T-shirt or the same color T-shirt that

he is wearing in the photograph.

And in light of that, Judge, I think that for want of

a better way to put it, the investigation became something other

than an investigation in fact. They tried to make absolute

certain that they got this guy. They didn't try to find out if

this person could identify him. They said, this is him.

And I think that based on that, Judge, everything that

follows, the independent basis, they have got to establish an

independent basis. They have got to get this guy to say, I smoked

a blunt with him. This guy has got to say now because of the way

the lineup went, yes, I know him.

But if he knew him, put his picture in a lineup. Do it

fair. He didn't know him. Of course, now, he does. So, I think

-20-

1   that anything that follows from that judge should be excluded.

2   His testimony should be excluded per se. Nothing further, Judge.

3          THE COURT: Go ahead, Mr. Rollstin.

4          MR. ROLLSTIN: Judge, a couple of points. Recalling

5   the testimony from March 8th, first of all, the transcript has

6   been prepared, is that correct, and I am going to take that as

7   a -- I don't think the court report is -- that is her in the

8   courtroom today was the court reporter on March 8th.

9          MS. FREDERICK: In fact, she was.

10          MR. ROLLSTIN: Is that true then, my mistake. Yes.

11   While I am thinking about it, I am going to make a request for

12   a copy of that. I think by court rule when it is filed, both

13   sides are do one, but we will clear that up. I don't think it is

14   a big deal.

15          Counting the testimony from March 8th, the testimony of

16   the officer in charge was that Mr. Jones was not in custody on the

17   day that she went and showed the picture to Mr. Martin, which was

18   according to her testimony the 16th of November. And the reason

19   that she took that photograph out there was to find out if the

20   Fresh that he had talked about originally was the person,

21   whether this was Fresh as has been described to her.

22          Now, so, the in-custody issue, I believe, rests on that

23   testimony. That is the only evidence on the record as to his

24   custody status at the time that the photograph was shown.

25          There is two issues here. One is was the lineup

suggestive, and if it was, you went down to the next issue, and that is is there an independent basis for the identification. Number one, as always is the case, I think the proof is in the pudding. What I mean by that is three guys see the lineup. Only one of them picks out Mr. Jones. And I, without spending a lot of time on that issue, that speaks volumes, I believe, in terms of how suggestive that lineup could have possibly have been for Mr. Jones if only one out of three people picked him out.

Now, you know, for a moment, if you want to visit the idea to be unduly suggestive and then go on down to the issue of is there an independent basis, you know, Mr. Martin's testimony is quite clear that he has known him for over a year. They spent time socializing together and he recognizes him when he sees him. And that is the reason and through the court's questioning which was very succinct and on point.

Why did you pick him out. Because that is the guy I saw driving the car during the shooting. That is really all the substantive argument that I have right now. I would be happy to answer any questions for the court.

THE COURT: Okay. Anything else?

MS. FREDERICK: Yes, Your Honor.

THE COURT: Go ahead.

MS. FREDERICK: The fact that only Mr. Martin picked him out is only significant if we don't consider Joseph McCirmon's admission that he saw the picture just moments before the lineup.

-22-

LASER STOCK FORM FMSRN

THE CORBY GROUP 1-800-255-5040

It is a stroke of conscience. The fact that Phillip Mason not have picked him out may very well be attributed to the same thing. All three of them saw the photograph and maybe two of them decided not to proceed, I don't know.

I am just simply saying that is not even important that only one of them picked him out, but the fact that they saw the picture and only one picture, the fact that the show-up attorney who has objected, stated that he had some objections, that he had some concerns. Even when asked on cross-examination by the prosecution whether or not he felt the lineup was unduly suggestive, he said, yes.

And in light of that, an objective individual stating that and then the court now being aware that only one photograph, and then the court now being made aware that through the independent basis argument that this guy knew him. So, even if that is the case, Judge, why is there only one photograph. Let him pick him out.

And, in fact, the homicide -- the case didn't even become the homicide until the 16th, Your Honor. The individual was injured, severely injured but did not pursuant to the medical examination report, he didn't die until the 16th. The photograph was shown on the 17th when he was in custody.

Investigator Miller was not quite able to document. We requested during the examination, but we did find out, in fact, that the decedent expired on the 16th. The case wouldn't

-23-

become the homicide case on the 17th according to her own testimony

and if that be the case, this man was in custody and he had a right

to have me there to participate and to protect his rights during

his lineup. I would have obviously made an objection to one

photograph being shown.

Thank you, Judge.

THE COURT: Okay. The issue as to whether or not there

was an actual -- necessarily improper lineup is one of the issues

in this case. With the additional factors regarding the showing

of a photograph based on some investigative procedures that were

involved in trying to identify and verify person  known by the

nickname as being the same person.

Now, as to that, I don't see that as requiring the same

kind of rules about there being a display and counsel present

and that that would automatically preclude or exclude, you know,

in-court identification because at some point during the

investigative part of this, the police showed a single photograph

whose objective purpose was based on what Mr. Martin had said the

day before by giving a nickname to essentially before proceeding

further to try to further identify the person known as Fresh.

And to proceed, you know, thereafter.

Certainly, we all know that on the streets people know

people by nicknames and so forth. And that they may be around a

person you know for a number of months and a year or so and not know

more than a nickname but able to look at and know who that person

-24-

1 is any time that person is exposed to them.

2  So, as to Mr. Martin now who I am considering in this

3 context here in the photograph, I think that the showing of the

4 single photograph was for a legitimate reason and that that in

5 and of itself doesn't lead to a preclusion of an identification.

6 Certainly, I think that it may be a factor that could be weighed

7 in the overall circumstances of the lineup itself as to whether

8 or not that lineup was suggestive and also could be weighed by

9 the trier of fact, but a motion of this kind looks to whether or

10 not the police has engaged in conduct that lends itself to a

11 suggestiveness that would lead to a misidentification or a -- such

12 that the identification is subject to question.

13  And the additional factor, of course, with Mr. Martin

14 is that he said that he had known and seen the defendant many

15 times before. He gave that name, I guess, within minutes or so

16 after the shooting of Mr. Perdue and the police followed up with

17 trying to verify that Fresh, a person named Fresh had a name

18 and identification that they could be sure of.

19  Now, certainly, there is some issues that are being

20 raised by the lineup itself. And I am not completely aware of

21 the entire record on that based on what the witness said or

22 what one allegedly said as they were coming into and going out

23 of the lineup procedure, but one of the things that even though

24 the lineup attorney had some concerns about this, the record

25 indicates and the law requires that the defense has the burden

-25-

of proof when an attorney is present to show that the lineup was
so suggestive as to lead to misidentification.

Whatever the fact of a T-shirt and the hair, and I
don't know, I don't recall a description being given about the
braids, any more than the driver of the vehicle, but the fact
of a T-shirt in itself is not by itself enough to do that. But
as indicated, if in fact it was as suggestive, an argument can
be made and you would think that a person would have been able
to pick out the defendant as the person who was the shooter.

So, I am not convinced that the lineup in and of
itself was improper. My focus is whether or not the photograph
induced something and whether or not there was an independent
basis for what Mr. Martin did. And I think that certainly is,
the law recognizes. I am trying to find the exact wording
here, the factors to be used in determining whether an independent
basis exists for the identification.

Include, one, prior relationship with or knowledge
of the defendant; the opportunity to observe the offense, the
length of time between the offense and the disputed identification,
the accuracy of or discrepancies in pre-lineup or show-up
description given by the witness compared with the person's
actual appearance. Any previous proper identification or failure
to identify the defendant. Any identification prior to lineup
or show-up or another person as the defendant. Nature of the
offense are accepted.

-26-

Those are all different factors that are listed in cases of People versus Kachar and other cases along that line.

So, the prosecution in this particular case in terms of Mr. Martin has essentially shown and as I indicated of my questioning of Mr. Martin, his identification of the defendant was not based on the previously shown photograph but as he said, based on the person he saw out there that day and the fact that he had known the defendant before and had even been in the defendant's presence on numerous occasions.

With the deceased in this case, and if I remember correctly, I don't know whether I heard it or argument or somewhere that this was part of some kind of a dispute that was going on here, but anyway, Mr. Martin's identification stands. He will be able to testify at the trial.

Now, the -- I still need and want to know more about what was allegedly said after the lineup in the presence of the other person here who is not here, Mr. McCirmon. He is not here. What about Mason?

MR. ROLLSTIN: He is here.

THE COURT: Mason is the one that did not -- I am sorry, what did Mason do with this?

MR. ROLLSTIN: He did not identify.

THE COURT: He did not identify, okay. Now, did McCirmon make an identification or is he the one that made the comment?

MS. FREDERICK: Well, Judge, he identified him first,

-27-

1   and then when asked what happened, he responded that is the one the

2   guy that just left out said he was driving.  And then there was

3   another question and he spoke about the picture.

4       THE COURT:  Even in that particular context then, it

5   doesn't necessarily mean that teh identification process was

6   incorrect but how it is to be weighed as to what was said and

7   what he based his identification on.

8       There is nothing, I think, that would indicate that he

9   based his identification on something that the police did. And if

10  he is saying, you know, about something, something about the photo

11  and what somebody else said, that I think is to be weighed by

12  the trier of the fact rather than saying it wasn't an improper

13  identification or something that was in violation of the rules

14  that allow for identification.

15      But I will reserve and hear any, another record on

16  him before he would testify before a jury to establish any more

17  about what he did and what he said.  I don't know whether that

18  can be done -- well, we got a trial date in about a month or

19  so.  So, we can -- I can address that at that time if necessary.

20  But right now, the motion is denied.

21      MS. FREDERICK:  Your Honor -- thank you, Judge.

22      THE COURT:  All right.  We have a trial date already

23  set in this case.  We will proceed on from there.

24      MS. FREDERICK:  May 20th.

25      THE COURT:  Okay.

                            -28-

LASER STOCK FORM FMSRN

THE CORBY GROUP 1-800-255-5040

1        MR. ROLLSTIN:  Yes.

2        THE COURT:  Mr. Martin, you know that there is a trial

3   date set in this case in May.

4        WITNESS MARTIN:  Yes.

5        THE COURT:  Make sure you are here, okay?

6        WITNESS MARTIN:  Yes.

7        MR. ROLLSTIN:  He was served today, Judge.

8        THE COURT:  Okay.

9        If you change address or phone number, you let the

10  officer in charge know where you can be reached.

11       (Matter concluded at 2:30 p.m.)

12        -    -    -

R E P O R T E R ' S    C E R T I F I C A T E

STATE OF MICHIGAN     )
                      )    ss.
COUNTY OF WAYNE       )


        I, CLARA SHAH, CSR-2602, an Official Court Reporter in and for the Third Judicial Circuit Court for the County of Wayne, State of Michigan, do hereby certify that I have reported stenographically proceedings had and testimony taken in the above-entitled cause, and I do further certify that the foregoing transcript constitutes a full, true and complete transcript of said stenographic notes.


_____

CLARA SHAH, CSR-2602
OFFICIAL COURT REPORTER