*Recd Court Administration*
*5-24-13 @ 3:26pm    mnb*

# STATE OF MICHIGAN

## IN THE WAYNE COUNTY CIRCUIT COURT – CRIMINAL DIVISION

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

  -vs-

JAMES ALFRED JONES,

        Defendant-Appellant.

Wayne Circuit Court File
No. 2001-013853-01

Hon. Dana Margaret Hathaway

_____/

LAURA KATHLEEN SUTTON (P40775)
Attorney for Defendant-Appellant Jones

_____

WAYNE COUNTY PROSECUTOR
Attorney for Plaintiff-Appellee

_____/

## **MOTION FOR RELIEF FROM JUDGMENT**

## **MEMORANDUM BRIEF IN SUPPORT**

## **PROOF OF SERVICE**



Laura Kathleen Sutton (P40775)
Attorney for James Alfred Jones
PO Box 388
Manchester, Michigan 48158
(734) 428-7445

STATE OF MICHIGAN

IN THE WAYNE COUNTY CIRCUIT COURT – CRIMINAL DIVISION

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

     -vs-

JAMES ALFRED JONES,

     Defendant-Appellant.

Wayne Circuit Court File
No. 2001-013853-01

Hon. Dana Margaret Hathaway

_____/

LAURA KATHLEEN SUTTON (P40775)
Attorney for Defendant-Appellant Jones

_____

WAYNE COUNTY PROSECUTOR
Attorney for Plaintiff-Appellee
_____/

## MOTION FOR RELIEF FROM JUDGMENT

     Defendant-Appellant, JAMES ALFRED JONES, by and through his attorney, Laura Kathleen Sutton, files his Motion for Relief from Judgment pursuant to MCR 6.502(C), and says:

     1.    On May 22, 2002, James Alfred Jones was convicted of first-degree murder [MCL §750.316]; three counts of assault with intent to commit murder [MCL §750.83]; felon in possession of a firearm [MCL §750.224f] and possession of a firearm during the commission of a felony [MCL §750.227b] following a jury trial in the Wayne County Circuit Court – Criminal Division.

     2.    On June 20, 2002, trial judge, the Honorable Thomas E. Jackson, imposed a sentence of life in prison of the murder conviction; fourteen years and three months to twenty-five years in prison for each assault with intent to murder convictions; two to five

1

years in prison for the felon in possession of a firearm conviction and two years for the

felony firearm conviction;. 218-days of preconviction confinement credit were granted.

    2.    Mr. Jones is currently housed at the Carson City Correctional Facility,

Carson City, Michigan 48811, where he continues to serve the sentences imposed by

Judge Jackson as inmate no. 362351. Mr. Jones was born on July 18, 1978 (34).

Factual Background/Case Summary

    3.    This case has been designated as Wayne County Circuit Court Case No.

2001-013853-01. Viewing the evidence in a light most favorable to the prosecution, as

we must do, the Michigan Court of Appeals summarized the trial evidence as follows:

> On November 14, 2001, Jones was robbed near Ahmad Akins' house. Edward Martin and Phillip Mason, who knew Jones from the neighborhood, witnessed the robbery. According to Martin, Jones may have thought Martin and Mason were connected to the robbery.
>
> The following afternoon, at approximately 5:00 p.m., approximately thirteen people were standing on the northwest corner of Heyden and Clarita in Detroit, in front of Akins' house, including Akins, Martin, Mason, Demetris Purdue and Joseph McCrimon. As Akins was entering the house, Jones slowly drove by in his green Oldsmobile Aurora with two other occupants, one in the passenger seat and one in the back seat. Martin stated he clearly saw the driver and identified him as Jones. The car stopped at the stop sign and the occupants grimaced at the crowd, but did not speak. The car then turned right onto Clarita and drove toward Evergreen Road.
>
> About two or three minutes later, Akins walked out of the house and was standing on the front porch when the Oldsmobile drove by again and a person in the backseat fired 20 to 30 rounds from an AK-47 into the crowd. Akins was shot on the top of the head, but survived. Perdue was shot in the lower back and left leg, and died from his injuries. When police arrived on the scene, Martin identified Jones as the driver. *People v James Alfred Jones*, unpublished PER CURIUM opinion of the Court of Appeals (Docket 244062; 12/14/2004), pp 1-2.
>
> Details related to the issues presented are contained within the body of the issue.

2

## Jurisdiction & Application of MCR 6.508(D) to the Grounds for Relief

4.      This Court has jurisdiction to hear this motion. MCR 6.501 provides that a judgment of conviction entered by the Wayne County Circuit Court, not subject to appeal under subchapters 7.300 or 7.200, may only be brought under subchapter 6.500. These judgments of convictions were entered by the Wayne County Circuit Court and are not subject to appeal under subchapters 7.300 or 7.200. Further, the jurisdictional limitations found in MCR 6.502(G) are *not* applicable since this is Mr. Jones' first and only motion for relief from Judgment.

5.      While MCR subchapter 6.500 contemplates finality in the appellate process by providing one post-August 1, 1995 post-conviction review process, its promulgation was not intended to raise an insurmountable bar to obtaining relief. The court need not require a showing of "cause" if the issue is jurisdictional or could not have been raised on direct appeal or a prior motion. MCR 6.508(D)(3). The motion need not show "cause" and may re-litigate previously raised issues if a retroactive change in the law has undermined the prior decision. MCR 6.508(D)(2). The court may dispense with the "cause" requirement altogether if there is a "significant possibility" of innocence, MCR 6.508(D); *People v Swain*, 288 Mich App 609 (2010), and "cause" may be established by showing ineffective assistance of appellate counsel. *People v Reed*, 449 Mich 375; 535 NW2d 496 (1995).

6.      As to MCR 6.508's prejudice prong, as shown within the body of each argument, the grounds for relief are such that in the absence of the defects in the criminal prosecution Mr. Jones would have had a reasonable chance of acquittal, MCR 6.508(D)(3)(b)(i), and were so offensive to the maintenance of a sound judicial system such that the conviction should not be allowed to stand, MCR 6.508(D)(3)(b)(iii).

3

Thus, while the phrasing of MCR 6.508 is in the negative, the above exceptions make it clear that the Court's promulgation of subchapter 6.500 was not an abandonment of its long held belief that "*neither side of a case has a legitimate interest in immunizing legal errors from correction.*" *In re Burton*, 429 Mich 133, 149; 413 NW2d 413 (1987).

7.     In the alternative, by statute, a trial court possesses authority to grant relief "for any cause for which by law a new trial may be granted, *or when it shall appear to the court that justice has not been done, and on such terms or conditions as the court shall direct.*" See MCL 770.1 (emphasis supplied); *People v Cress*, 250 Mich App 110; 645 NW2d 699 (2002) (applying statute to 6.500 motion for relief).

8.     Mr. Jones would urge this Court to hesitate prior to imposing the "cause" requirement of MCR 6.508(D)(3)(a) to avoid ruling on the merits of the claims. In *People v Jackson*, 465 Mich 390, 397; 633 NW2d 825 (2001), the Supreme Court held that if either "good cause" or "actual prejudice" is lacking, a trial court need not address the other prong before denying the motion. The *Jackson* procedure is the appropriate approach here. If the issues are found lacking in merit, then this court may dismiss the motion without addressing the more thorny matter of "good cause" and promptly dispose of the matter.

9.     The issues presented cast significant doubt on the validity of the verdict and/or the appellate process enforcing that verdict. Here, unlike many motions for relief from judgment brought before this court, Mr. Jones has *not* abused the appellate process. In *People v Reed, supra*, at 381, the Court stated that the "*specific purpose for creating the postconviction procedure was . . . to end repetitious motions for new trials.*" Mr. Jones has <u>not</u> abused the appellate process by filing frivolous "repetitious motions for new trials".

4

10.     This case deserves more than a fleeting glance.   This is Mr. Jones' last chance to seek review in the state courts.  In light of the above, reviewing the issues herein for "prejudice" first as permitted by *Jackson* is clearly appropriate.  Then, if the issues are found lacking in merit, this court may dismiss the motion while still ensuring that injustice has not occurred, the ultimate duty of a reviewing court in any criminal matter.

Grounds Justifying Relief from Judgment

11.     The grounds justifying relief from judgment are:

**I.      JAMES ALFRED JONES IS ENTITLED TO RELIEF FROM JUDGMENT BECAUSE THE COURT'S INSTRUCTIONS ON AIDING AND ABETTING PREMEDITATED MURDER AND ASSAULT WITH INTENT TO COMMIT MURDER VIOLATED DUE PROCESS.**

This case requires the Court to determine whether Michigan's aiding and abetting jurisprudence in specific intent cases satisfy the principles of *In re Winship*, 397 US 358; 90 S Ct 1068; 25 L Ed2d 368 (1970), and its progeny, including *Sandstrom v Montana*, 442 US 510; 99 S Ct 2450; 61 L Ed2d 39 (1979), specifically, that the Due Process Clause of the Fourteenth Amendment "*protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime*".   397 US at 364.

In this case Mr. Jones was charged in the premeditated murder of Demetris Perdue premised upon an aider and abetting theory.  Under Michigan law, the crime of murder, no matter its type, requires proof of intent.  *People v Aaron*, 409 Mich 672, 728-729; 299 NW2d 304 (1980).  MCL §750.316(1)(a) incorporates the proof necessary for first degree premeditated murder, which is a premeditated and deliberated intent to kill, *People v Jackson*, 292 Mich App 583; 808 NW2d 541 (2011).  A statute that requires proof that the defendant had a "particular criminal intent beyond the act done" creates a specific intent

crime. *People v Depew*, 215 Mich 317, 320; 183 NW 750 (1921). First-degree murder is a specific intent crime. *People v Biggs*, 202 Mich App 450, 454, n 1; 509 NW2d 750 (1993); *People v Thomas*, 126 Mich App 611, 623; 337 NW 598 (1983).

In order to find Mr. Jones guilty of aiding and abetting the premeditated murder of Demetris Perdue the jury had to first determine if he was guilty of aiding and abetting with the specific intent for premeditated murder. The court instructed:

> To be convicted as an aider and abettor, the defendant must have had the requisite intent himself, or participated in the crime, *while knowing that the co-participants possessed the requisite intent*. (TT 5/22/2002 p 72).

There was no question that Demetris Purdue was shot and killed during a drive-by shooting. Thus, the only question for the jury was whether or not it had been proven beyond a reasonable doubt that James Jones had aided and abetted the crime of premeditated and deliberated murder.

Mr. Jones submits that Michigan's aiding and abetting jurisprudence which allows conviction on mere knowledge of the principal's intent; while the underlying offense of first degree premeditated murder requires specific intent, violates Due Process. Stated otherwise, the aiding and abetting instruction referenced above when applied to a specific intent crime the finding of intent or knowledge is incompatible with the mental state needed to prove first degree premeditated murder, which is only specific intent.

Michigan's aiding and abetting statute, MCL §767.39, does not provide for a *mens rea* for aiders and abettors:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsel's, aids, or abets in its commission may hereafter be prosecuted, indicted, tried, and on conviction shall be punished as if he had directly committed such offense.

6

Michigan law holds that aiding and abetting is not a substantive offense, it is merely a prosecutorial theory that allows for the imposition of liability upon accomplices. *People v Robinson*, 475 Mich 1; 715 NW2d 44 (2006). In the absence of a statutory definition of aiding and abetting, the Michigan Supreme Court has held in order to show aiding and abetting it must be established that (1) the crime charged was committed by the defendant or some other person; (2) that the defendant performed acts or gave encouragement that assisted in the commission of the crime, or (3) the defendant intended commission of the crime or had knowledge that the principal intended its commission at the time of rendering aid and encouragement.   *People v Robinson, supra*, 475 Mich at 6.

Michigan's aiding and abetting instruction when applied to a specific intent crime such as premeditated murder unconstitutionally permitted Mr. Jones' jury to convict upon a finding of intent with *knowledge* of the other person's intent; when the only intent sufficient to prove premeditated murder – is a specific intent as applied to the accused.   This instruction violates due process and undermines the integrity of the verdict.

The same objections to the aiding and abetting instruction as applied to premeditated murder apply with equal force in this case to the Court's instructions on the assault with intent to commit murder charges involving Ahmad Akins, Edward Martin, and Phillip Mason:

> Now the crime of assault with intent to murder requires proof of a specific intent this means that the prosecution must prove not only that the defendant did certain acts, but that he did the acts with the intent to cause a particular result. For the crime of assault with intent to murder, this means that the prosecution must prove that the defendant intended to kill or that he aided and abetted with that specific intent. As I said, to be convicted as an aider abettor of a crime, that requires specific intent, the defendant must have had that specific intent himself or participated in the crime while knowing that his co-participants had that specific intent. (TT 5/22/2002 p 77).

7

In Michigan, the crime of assault with intent to murder is a specific intent crime. *People v Taylor*, 422 Mich 554; 375 NW2d 1 (1985); *Warren v Smith,* 161 F23d 358 (CA 6, 1998). Thus, intent to kill for purposes of this offense may not be found by intent to inflict great bodily harm or a wanton and willful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm, only specific intent will suffice. *People v Taylor, supra; Warren v Smith, supra.* And as noted above, proof of a specific intent crime requires proof that the defendant had a "particular criminal intent beyond the act done". *People v Depew*, 215 Mich 317, 320; 183 NW 750 (1921).

These instructions allowed the prosecution to convict Mr. Jones on a theory of criminal liability involving a lesser intent than that required by the substantive crimes.[1] These instructions individually and collectively violated Mr. Jones' constitutional rights and denied a fair trial. US Const, Amend XIV.

Relief is sought in the form of a new trial.

II.     **JAMES ALFRED JONES IS ENTITLED TO RELIEF FROM JUDGMENT BECAUSE THE TRIAL COURT'S INSTRUCTION ON THE CAUSATION ELEMENT OF MURDER DIRECTED A VERDICT ON THAT ELEMENT AND/OR SHIFTED THE BURDEN OF PROOF ON THAT ELEMENT.**

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002); *People v Anstey*, 476 Mich 436; 719 NW2d 578 (2006) (jury must have clear and correct understanding of what they are to decide); *In re Winship, Sandstrom v Montana, supra.*

---

[1]      See for example, *Roberson v Cain*, 324 F3d 297, 302-303 (CA 5, 2003), citing *Flowers v Blackburn*, 779 F2d 1115 (CA5, 1986) (finding that a similar jury instruction unconstitutionally "relieved the state of proving [defendant's] specific intent to kill").

The trial court's instructions on the causation element of murder directed a verdict on that element and/or shifted the burden of proof. In its charge to the jury, the trial court instructed the jury that "*the defendant is charged with the crime of first degree premeditated murder or aiding and abetting*":

> To prove this, the prosecution must prove the following elements beyond a reasonable doubt:
>
> First, that the defendant caused the death of Demetris Perdue, that is, *that Demetris Perdue died as a result of gunshot wounds either by the defendant or that the defendant aided and abetted in that to occur.* (TT 5/22/2002 p 73; see also TT 5/22/2002 pp 75-76, same instruction given as to second degree murder).

What this instruction told the jury was that, if Demetris Perdue died as a result gunshot wounds, which he did, then Mr. Jones caused Demetris Perdue's death and this element was established. A directed verdict in a criminal case is unconstitutional. See *Rose v Clark*, 478 US 570, 578; 106 S Ct 3101; 92 L Ed2d 460 (1986); *People v Gaydosh*, 203 Mich App 235; 512 NW2 65 (1994).

Not only did this instruction direct a verdict or shift the burden of proof on the element of causation, the instruction was exacerbated by the aiding and abetting instruction which returned the jury to the intent instruction discussed in Issue I, *supra*, and incorporated herein; i.e., knowledge as to the principal's intent to commit first degree premeditated murder is sufficient to convict of first degree murder. A criminal defendant is entitled to have all of the elements of the crime submitted to the jury in a charge which is neither erroneous nor misleading. *People v Feezel*, 486 Mich 184; 783 NW2d 67 (2010), citing *People v Pepper*, 389 Mich 317, 322; 206 NW2d 439 (1973).

9

The instructions in this instance, singularly or as a whole, constituted reversible error. The remedy sought is a new trial wherein the jury is instructed as constitutionally required.

III.     JAMES ALFRED JONES IS ENTITLED TO RELIEF FROM
         JUDGMENT BECAUSE HE WAS DENIED HIS SIXTH
         AMENDMENT RIGHT TO COUNSEL OF CHOICE,
         WHICH THE UNITED STATES SUPREME COURT HAS
         DETERMINED TO BE A STRUCTURAL DEFECT AND
         NOT SUBJECT TO HARMLESS ERROR ANALYSIS AND
         OTHER PROCEDURAL BARS.

The United States Supreme Court long ago firmly established the principles pertaining to the right to counsel. To be assured of a fair trial firmly federal law holds that a criminal defendant "requires the guiding hand of counsel at every step in the proceedings against him." *Gideon v Wainwright*, 372 US 335, 345; 83 S Ct 792; 9 L Ed2d 799 (1963). Federal law long held that "It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded opportunity to secure counsel of his own choice." *Powell v Alabama*, 287 US 45, 53; 53 S Ct 55; 77 L Ed 382 (1932).

The deprivation of the right to counsel of choice is structural error independent of fairness. *United States v Gonzalez-Lopez*, 548 US 140; 126 S Ct 2557; 165 L Ed 2d 409 (2006). In *Gonzalez-Lopez* the Supreme Court made it clear that the Sixth Amendment right to counsel of choice command is not a command that a particular trial outcome be fair, or that a competent counsel represent the accused, but rather it is a guarantee that the accused be defended by the counsel believed to be best. The right is not unfettered. The accused is not entitled to be represented by an attorney he cannot afford; an attorney who is not willing to represent the accused; an attorney with a conflict of interest; or, other than self-representation, an advocate who is not a member of the bar. *Wheat v. United States*, 486 U.S. 153, 159; 108 S Ct 1692; 100 L Ed2d 140 (1988). While a court may consider the demands of its calendar, the court "must recognize a presumption in favor of [a defendant's] counsel of choice." *Wheat v. United States, supra.*

11

On the first day of Mr. Jones' trial, defense counsel, Attorney Leesa Frederick, told the court that on the preceding Friday Jones and his family had informed her that they had "the intent to retain Mr. Terrell Thomas" and that she should prepare to turn over case documents to Attorney Thomas. Attorney Frederick then told the court that she had spoken with Attorney Thomas, but he had not appeared so "I need to proceed on Mr. Jones' behalf." She told court Judge Jackson that she felt her "advocacy has been diminished" but that she was prepared to go to trial. (TT 5/20/2002 p 3).

In response, the court told Attorney Frederick that it was the day of trial, a jury was waiting, and that he had not been contacted by any attorney about entering the case on behalf of Mr. Jones. Without any further inquiry of Attorney Frederick or any inquiry at all of Mr. Jones, Judge Jackson proceeded to trial commenting that the trial had long been scheduled. Judge Jackson indicated that a jury was waiting and that he had not been contacted by any attorney on this matter. A jury panel was called and told by Judge Jackson that he had a reputation for moving cases along quickly. (TT 5/20/2002 pp 4, 26).

Mr. Jones request to proceed to trial with his counsel of choice was not equivocal. There was no determination of how long, if at all, counsel of choice would have needed to get up to speed and go to trial. While Judge Jackson could rightly claim he had a reputation for moving trials along, and balancing the court calendar is a consideration under *Gonzalez-Lopez*, here, there was no balancing of competing interests by the Court - just a terse denial of the defendant's request. Ironically, after denying the request for counsel of choice, and shortly after the noon recess, trial *was* adjourned because the

12

prosecution's officer-in-charge and most of the prosecution's witnesses - evidence technicians, as well as several major civilian witnesses failed to appear.

Relief in the form of a new trial is required.

IV. **JAMES ALFRED JONES IS ENTITLED TO RELIEF FROM JUDGMENT BECAUSE HE WAS DENIED HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION BY THE ADMISSION OF HEARSAY TESTIMONY FROM AN EXPERT WITNESS AND BY THE ADMISSION OF A HEARSAY FORENSIC REPORT ADDRESSING A CRITIAL ELEMENT OF THE OFFENSE.**

The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v Texas*, 380 US 400; 85 S Ct 1065; 13 L Ed2d 923 (1965). Sixth Amendment protections are not so broad as to exclude all hearsay statements, *Maryland v Craig*, 497 US 836, 847-848; 110 S Ct 3157; 111 L Ed2d 666 (1990), they may be admitted *only* if within a firmly rooted exception to a hearsay rule, *Lilly v Virginia*, 527 US 116, 124; 119 S Ct 1887; 144 L Ed2d 117 (1999), *Ohio v Roberts*, 448 US 56, 65; 100 S Ct 2531; 65 L Ed2d 597 (1980), overruled on other grounds, *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed2d 177 (2004).

The United States Supreme Court's March 2004 decision in *Crawford v Washington* overruled in part the *Ohio v Roberts'* rationale that hearsay was admissible under state evidentiary rules as long as there was indicia of reliability. In *Crawford v Washington*, the Supreme Court bluntly held that testimonial statements are inadmissible absent strict conditions: "[W]here testimonial statements are at issue, the only indicium of reliability is confrontation." *Id.* These conditions were not met in this case where the pathologists' report was read to the jury.

13

*[handwritten note: Where is the legal Analysis? What prejudice?]*

In *Melendez-Diaz v Massachusetts*, 557 US ____; 129 S Ct 2557; 174 L Ed2d 314 (2009), the United States Supreme Court held that expert witnesses reports are subject to the Confrontation Clause prohibition against hearsay. It is worth noting that Justice Scalia used *autopsy* reports to illustrate why cross examination of forensic analysis is critical to ensure constitutional protection. See *Melendez-Diaz*, 174 L Ed2d at 326, fn 5.

In *Bullcoming v New Mexico*, 564 US ____; 131 S Ct 2705; 180 L Ed2d 610( 2011), the United States Supreme Court held that the analyst who actually prepared a forensic report must take the stand, and a surrogate witness does not satisfy the Constitutional requirement of Confrontation, when forensic reports are admitted to prove the truth of the matter asserted. Documents produced in the regular course of business may not be admitted if the regular course of business, if they have a purpose of establishing a past event potentially relevant to later criminal prosecutions. *Bullcoming v New Mexico,* 131 S Ct at 2714 n 6.

In *People v Dendel (After Second Remand)*, 289 Mich App 445; 797 NW2d 645 (2010), the Michigan Court of Appeals recognized that autopsy reports were forensic reports for purposes of confrontation, were testimonial, and that because of police involvement in the preparation of the autopsy report at issue, the surrogate pathologist should not have testified. In the course of surveying the legal landscape concerning the right of confrontation and the presentation of autopsy reports, the *Dendel* panel cited *United States v De La Cruz*, 514 F3d 121 (CA 1, 2008) for the proposition that the use of autopsy reports do not violate confrontation rights. However, it should be noted that the First Circuit has equivocated in its position, specifically noting: "the law has continued to

evolve and no one can be certain just what the Supreme Court would say about that issue today. See *Nardi v Pepe*, 662 F3d 107 (CA 1, 2011).

Confrontation Clause precedent as it pertains to autopsy reports has evolved and focuses on police involvement. In Michigan trials, relatives of the deceased testify as to identifying the decedent at the medical examiner's office; autopsies are performed in the presence of police officers who frequently collect bullets, clothing and other evidence at the time of the autopsy. As stated in *Melendez-Diaz v Massachusetts,*, "A forensic scientist responding to a request from a law enforcement officer may feel pressure – or have an incentive – to alter the evidence in a manner favorable to the prosecution." 129 S Ct at 2536.

*Crawford v Washington* and its progeny *Melendez-Diaz v Massachusetts, Bullcoming v New Mexico,* and *People v Dendel (After Second Remand),* are applicable to this case. *Crawford v Washington* was decided on March 8, 2004. Mr. Jones' direct appeal was pending and the Court of Appeals' decision was not released until December 14, 2004. Under Michigan jurisprudence, a new rule of constitutional procedure is applicable to cases still on direct review. A new rule is a rule that was not dictated by precedent at the time the conviction became final. A new rule announces a new rule if it overrules a prior decision. See People v Carp, ____ Mich App ____; ____ NW2d ____ (2012). *Crawford v Washington* constitutes such a rule and is applicable here.

Relief in the form of a new trial is requested.

V.    JAMES ALFRED JONES IS ENTITLED TO RELIEF FROM
      JUDGMENT WHERE DEFENSE COUNSEL VIOLATED HIS
      SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO
      THE EFFECTIVE ASSISTANCE OF COUNSEL.

The Sixth Amendment to the United States Constitution provides in relevant part:

In all criminal prosecutions, the accused shall enjoy the right to . . . have
the Assistance of Counsel for his defense.

Mr. Jones claims that he was denied his right to the effective assistance of counsel

under *Strickland v Washington*, 466 US 688; 104 S Ct 2052; 80 L Ed2d 674 (1984).

There is no relevant difference between an act of commission and an act of omission.

466 US at 690. The rights to counsel as provided under the federal and state constitutions

address the same concerns and protect the same rights.    *People v Hickman*, 470 Mich

602; 684 NW2d 267 (2004); US Const, Am 6; Const 1963, Art 1; §20.

A defendant need not show that it was "more likely than not that the outcome

would have been different" ineffectiveness may be established "even if the errors of

counsel cannot be shown by a preponderance of the evidence to have determined the

outcome." *People v Grant*, 470 Mich 477; 684 NW2 686 (2004).

To make a claim of ineffective assistance of counsel, Mr. Jones must overcome

the presumption that counsel's actions were based on reasonable strategy.    *Strickland,*

*supra.*  However, labeling counsel's errors "strategic" does not shield the performance

from Sixth Amendment scrutiny.    *Henry v Scully*, 918 F Supp 693, 715 (SDNY 1996);

also see *Cave v Singletary*, 971 F2d 1513 (CA 11, 1992).

The performance of counsel at trial may be assessed not *only* for specific errors or

omissions but also as a whole. *United States v Cronic*, 466 US 648; 104 S Ct 2032; 80 L

16

Ed2d 657 (1984); *Blackburn v Foltz*, 828 F2d 1177 (CA 6, 1987). As the Supreme Court stated in the seminal case of *Strickland v Washington*:

> The ultimate focus must be on the fundamental fairness of the proceeding whose result is being challenged. 466 US at 696.

In this case the performance of counsel at trial brings the fundamental fairness of Mr. Jones' criminal prosecution into question. A criminal prosecution does not occur in stuttering steps, it is a process that must result in a fundamentally fair proceeding. *Id.* MCR 6.504(B)(1)'s prerequisite that the court review the case file is especially suited to reviewing trial counsel's performance as a whole, and in its determination of counsel's performance with respect to Mr. Jones' challenge to his convictions.

Keeping mind the standards referenced above, the core question is "whether better lawyering would have produced a different result." *McQueen v Scroggy*, 99 F3d 1302, 1311 (CA 6, 1996). This court is asked to consider the following acts/omissions of trial counsel as justifying a finding of ineffectiveness of trial counsel:

A.     *Counsel should have objected to the aiding and abetting and causation instructions for the reasons set forth in Issues I and II, supra.* "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). Due to counsel's ineffective performance, the elements of the crime were submitted to the jury in a charge which was either erroneous or misleading. See *People v Feezel*, 486 Mich 184; 783 NW2d 67 (2010).

B.     *Counsel failed to protect her client's right to counsel of choice.* As discussed in Issue III, *supra*, Mr. Jones asserted his right to counsel of choice and counsel expressly noted that she felt her "advocacy has been diminished". While counsel did bring Mr. Jones' concerns to the attention of the Court, her performance in this regard was

17

deficient. Had counsel bothered to have questioned the prosecution's preparedness for trial, she would have known that the case was not going to go to trial that day and adjusted her request accordingly. Even after finding out that trial was going to be suspended for the day, she failed to renew Mr. Jones' request.

C.      *Counsel should have objected to a jury improperly sworn.* In this case after selecting a jury the prosecutor informed the court that he had no witnesses. Instead of delaying the trial, Judge Jackson decided to move things along and allow opening arguments by both parties and then swear in the jury the following day, before the first witness took the stand. Counsel failed to object. Criminal defendants have a due process right to a fair and impartial jury trial in state courts, *Croppi v Wisconsin,* 400 US 505; 91 S Ct 490; 27 L Ed2d 571 (1971); US Const Amend XVI.

Toward that end, MCL 768.14 and MCR 6.412(F) prescribe juror oaths. The process of swearing jurors is controlled by MCR 6.412(F), which states that after the jury is selected, but before trial begins, the court must have the jurors sworn and give them appropriate preliminary pretrial instructions. It has been held that the oath after jury selection is not a mere formality, and its omission may be grounds for reversal: *"This duty is not just a final duty to render a fair verdict in accordance with the law, but the duty to act in accordance with the law at all stages of the trial."* *People v Pribble*, 72 Mich App 219; 249 NW2d 363 (1976). The Michigan Supreme Court has held that summations of counsel are critical stages of a criminal trial. *People v Mallory*, 421 Mich 229, 229; 365 NW2d 673 (1984).

When an attorney fails to take adequate steps to protect client rights or the trial record for success on appeal by not objecting to fundamental errors, such omissions

can deny effective assistance of counsel. *Corsa v Anderson*, 443 F Supp 176 (ED MI 1977); *Gravley v Mills*, 87 F3d 779 (CA 6, 1996). In this case, defense counsel's ineffectual objections or the failure to object at all was ineffective assistance of counsel.

As noted in the standards of review portion of this issue, the core question is "whether better lawyering would have produced a different result." *McQueen v Scroggy*, 99 F3d 1302, 1311 (CA 6, 1996). The answer in this case is a resounding, "Yes."

There is more than a reasonable probability that had counsel's acts/omissions as set forth above not occurred, Mr. Jones would have had more than a reasonable likelihood of acquittal as required by MCR 6.508(D)(3)(b).

Relief in the form of a new trial, with the assistance of effective counsel is requested. In the alternative, a hearing pursuant to MCR 6.508(C) is requested. Either way, relief from judgment is required.

## VI. JAMES ALFRED JONES IS ENTITLED TO RELIEF FROM JUDGMENT BECAUSE HE WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS DIRECT APPEAL.

The right to counsel is the right to the *effective* assistance of counsel. *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), including the right to effective assistance of counsel on appeal *Evitts v Lucey*, 489 US 387; 105 S C t 830; 83 L Ed2d 821 (1985); *Joshua v DeWitt*, 341 F3d 430 (CA 6, 2003). Again, this court should keep in mind that a defendant need not show that it was "more likely than not that the outcome would have been different" ineffectiveness may be established "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *People v Grant*, 470 Mich 477; 684 NW2d 686 (2004).

Mr. Jones recognizes that appellate counsel is not required to raise all non-frivolous issues, *Jones v. Barnes*, 463 U.S. 745; 103 S Ct 3308; 77 L Ed2d 987 (1983). However, *Jones v Barnes* does *not* say that counsel's selection of issues on appeal is beyond scrutiny:

> Were it legitimate to dismiss a claim of ineffective assistance of counsel on appeal solely because we found it improper to review appellate counsel's choice of issues, the right to the effective assistance of counsel on appeal would be worthless. *Gray v Greer*, 800 F2d 644, 646 (CA 6, 1986).

Mr. Jones submits that the failure of appellate counsel to submit (or properly submit on direct appeal) the issues presented herein was ineffective assistance of appellate counsel. While it is true that winnowing out issues and issue presentation is a discretionary task accorded to appellate counsel, exercising that discretion must be made with reasoned professional judgment, not merely made slapdash or as a matter of expediency. It is also an attorney task that is reviewable by this Court. *Gray v Greer, supra.*

As a substantive claim, appellate counsel's performance constituted a Sixth Amendment violation and a relief from judgment should be granted.

As a procedural claim, it is worth noting that M.C.R. 6.500 had been promulgated well before this appeal and that competent counsel would have been aware that by "winnowing" out issues she would subject any omitted issues to the harsh requirements of cause and prejudice, thus adding heightened importance to the issue selection process.

Adequate counsel would also have been aware that by failing to include these issues in the direct appeal counsel was exposing his client to procedural default in both state and federal court. These issues did not detract from those presented nor place the pleading beyond some court rule boundary. Given the significant potential benefit to the client, and the insignificant costs – strategic or otherwise – required to preserve these claims for later federal court review, adequate counsel would not have ignored the issues presented herein.

It is not as if counsel's client was serving a sentence fashioned to deter the client

from bad behavior in the near future, the client was a young man being sent to prison the

remainder of his life. Mr. Jones is not claiming that his attorney was altogether ineffective.

Mr. Jones would refer this court to a statement made by United States District Court Judge

Arthur Tarnow in a case in which Judge Tarnow found counsel was ineffective:

> In reaching this conclusion, the Court notes that ... counsel's error, although constituting ineffective assistance, does not evidence a lack of commitment or conscientiousness. . . . counsel's failure does not reflect negatively on his abilities; rather, it reflects that a conscientious attorney can make mistakes which prejudice his client. *Davis v Booker*, 594 F Supp2d 802 (ED MI, 2009).[2]

> Relief in the form of issue review is requested.

### Appellate History & Representation Per MCR 6.502(C) (9) & (10)

13.    A summary of Mr. Jones appellate history and prior representation per

MCR 6.502(9) and (10) is as follows:

a.    The Michigan Court of Appeals affirmed the convictions and sentences on direct appeal. *People v James Alfred Jones*, per curium opinion of the Court of Appeals, Issued December 14, 2004 (Docket No 244062). All proceedings complete.

b.    An application seeking leave to appeal the issues raised in the Court of Appeals was made to the Michigan Supreme Court. The Court by standard order denied leave to appeal. *People v James Alfred Jones*, Order of the Court, Issued August 30, 2005 (Docket No 127970). All proceedings complete.

c.    Attorney Leesa A. Frederick (P53372) represented Mr. Jones at the trial court level. SADO Attorney Jacqueline J. McCann (P58774) provided representation in the Michigan Court of Appeals and in Michigan Supreme Court.

---

[2]    The finding of ineffectiveness was reversed at *Davis v Booker,* 589 F3d 302 (CA 6, 2009). Judge Tarnow's holding that even conscientious attorneys can make serious mistakes that prejudice their clients was left undisturbed.

## RELIEF SOUGHT

**WHEREFORE,** Defendant-Appellant JAMES ALFRED JONES respectfully requests this Honorable Court to grant the following relief:

a) Direct the prosecutor to answer the assignment of errors contained in this motion and brief;

b) Review the issues on their merits because of ineffective assistance of appellate counsel; and thereafter,

c) Set aside the convictions per Issues I, II, III, IV, and/or Issue V.

Respectfully submitted,

LAURA KATHLEEN SUTTON (P40775)
Attorney for Defendant-Appellate Jones
PO Box 388
Manchester, Michigan 48158
(734) 428-7445

Dated: May 24, 2013.

## AFFIDAVIT IN SUPPORT OF MOTION

By my signature below I hereby affirm that I have read the foregoing Motion for Relief from Judgment and find its contents true and factual to the best of my knowledge and belief.

LAURA KATHLEEN SUTTON (P40775)
Attorney for Defendant–Appellant Jones

Dated: May 24, 2013.

STATE OF MICHIGAN

IN THE WAYNE COUNTY CIRCUIT COURT – CRIMINAL DIVISION

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

           Wayne Circuit Court File
   -vs-          No. 2001-013853-01

JAMES ALFRED JONES,        Hon. Dana Margaret Hathaway

        Defendant-Appellant.

_____/

LAURA KATHLEEN SUTTON (P40775)
Attorney for Defendant-Appellant Jones

_____

WAYNE COUNTY PROSECUTOR
Attorney for Plaintiff-Appellee

_____/

## BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT

    Defendant-Appellant James Alfred Jones, by and through his attorney, Laura Kathleen Sutton, per MCR 2.119(A)(2), cites the following authority in support of his motion for relief from judgment: *Sandstrom v Montana, People v Feezel, United States v Gonzalez-Lopez, Crawford v Washington, Strickland v Washington, supra; Evitts v Lucey, supra;* as well as US Const, Amends V, VI and XIV.

           Respectfully submitted,

           *[signature]*
           LAURA KATHLEEN SUTTON (P40775)
           Attorney for Defendant-Appellant Jones
           PO Box 388
           Manchester, Michigan 48158
           (734) 428-7445

Dated: May 24, 2013.

STATE OF MICHIGAN

IN THE WAYNE COUNTY CIRCUIT COURT – CRIMINAL DIVISION

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

    -vs-

JAMES ALFRED JONES,

        Defendant-Appellant.

_____/

LAURA KATHLEEN SUTTON (P40775)
Attorney for Defendant-Appellant Jones

_____

WAYNE COUNTY PROSECUTOR
Attorney for Plaintiff-Appellee

_____/

Wayne Circuit Court File
No. 2001-013853-01

Hon. Dana Margaret Hathaway

## **PROOF OF SERVICE**

    Laura Kathleen Sutton, attorney at law, hereby certifies that on May 24, 2013 she served one copy of Defendant-Appellant's Motion for Relief from Judgment, Memorandum Brief in Support and Proof of Service upon the Wayne County Prosecutor's Office Appellate Division Frank Murphy Hall of Justice 1441 St. Antoine, Detroit, Michigan 48226.

        Respectfully submitted,

        Laura Kathleen Sutton (P40775)
        Attorney for Defendant-Appellant Jones
        PO Box 388
        Manchester, Michigan 48158
        (734) 428-7445

Dated: May 24, 2013.