STATE OF MICHIGAN
IN THE THIRD JUDICIAL CIRCUIT
CRIMINAL DIVISION

THE PEOPLE OF THE STATE OF MICHIGAN,
                            Plaintiff,        No. 01-013853
                                                          COA #244062

~V~

JAMES A. JONES,
       Defendant-Appellant.

## MEMORANDA OPINION AND ORDER
## DENYING MOTION FOR NEW TRIAL

Entered: January 15, 2004
Presiding: Thomas E. Jackson
Judge, Third Judicial Circuit

     On the date of May 22, 2002, a jury convicted the defendant of one count of first degree premeditated murder, MCL 750.316A; three counts of assault with intent to murder, MCL 750.83; felon in possession of a firearm, MCL 750.224f; and felony firearm, MCL 750.227b. He was sentenced to the statutory mandated term of life in prison for the murder conviction; concurrent prison terms of 14 years/3 months to 25 years for each of the assault with intent to murder conviction; 2 to 5 years for felon in possession of a firearm; and 2 years for felony firearm. Intervening his appeal of right, the case was remanded to the trial court for an evidentiary hearing. Defendant files a motion for a new trial and a motion for an evidentiary hearing. Central to the motion for a new trial are issues on effective assistance of counsel that bring a request for a "Ginther Hearing", People v Ginther, 390 MI 436, 212 NW2d 922 (1973). The "Ginther Hearing" was held on June 27, 2003 and December 19, 2003. (Because of illness, trial counsel was unable to appear prior to December 19, 2003).

     The pertinent facts of this case arise from a drive-by shooting on November 15, 2001, around 5:00 PM. Several young men were congregating in front of Ahmad Akins house near the intersection of Heyden and Clarita in the city of Detroit. A vehicle was driven slowly pass and the same vehicle came back within minutes. On the second drive-by several shots were fired from the vehicle. One death resulted and Akins suffereda bullet wound to the head. One of the young men in the group (Edward Martin) identified the defendant (known by the nickname of "Fresh") as the driver of the car on both times that the car was there. Martin had seen "Fresh" around the neighborhood for the past two years. Martin saw two other persons were in the car. r Joseph McCrimon was in the group. He identified defendant as the driver on the first pass but was not sure of the driver when the shooting occurred. He knew the defendant from the neighborhood. Martin said that he had smoked marijuana with the defendant the day before.

The defendant was robbed the day before a few blocks from where the shooting occurred and about a mile or two from where his mother resided. The prosecution proffered that the defendant believed persons in the group robbed him and the shooting was revenge for being robbed. After talking with the witnesses, the police gained a photograph of Jones that was shown to the young men who identified it as a photograph of the driver.

Defendant argues that he was denied the effective assistance of counsel because trial counsel: (1) failed to present his alibi defense; (2) failed to call the lineup attorney to discredit the identification testimony; and (3) failed to call the defendant to testify at the pre-trial hearing and to testify at trial. On June 27, 2003 the court heard the testimony of the defendant, Diane Jones (defendant's mother), Juanita Jones (defendant's grandmother), and Anessah Broadnax (defendant's girlfriend). Trial counsel, whose appearance was delayed because of illness, testified on December 19, 2003.

At the hearing held on June 27, 2003, the defendant testified that he first met with trial counsel, who had been hired by his mother, on November 18, 2001. With his attorney, he went to the police department and was arrested. From the beginning, he told counsel that at the time of the incident he was at his mother's apartment and earlier that day he and Anessah were together at a hotel room where they were residing. Prior to a job appointment she had at 4:00 PM, she drove him to his mother's house about 3:30 PM. He showered, ate and talked with his mother who was recuperating from surgery. While there, his grandmother (Juanita Jones) came to the apartment with his minor sister and at some point, a neighbor (Regina) who lived downstairs was there. He was at his mother's apartment for about one hour before Anessah returned about 5:30 PM to drive him back to the hotel. When asked about the matter of not testifying, he recalled that in response to the trial judge, he did say in open court that he did not want to testify, but this was because his lawyer told him not to testify.

Defendant's mother (Diane Jones) testified that on November 15, 2001 she was home recuperating from surgery. Her son, with Anessah, arrived at the apartment about the same time they did every day to take care of her. (On cross examination she testified that he arrived at her apartment about "11:00 to 12:00"). She was not sure of the exact time, but it was in the afternoon before her other children arrived home from school. During the time he was there, Jones was in the shower about an hour, prepared food for her and the children, and was there for about two hours until 5 to 6 PM. The girlfriend, Anessah came back and her son and Anessah, left about 6:30 or 7:00. Prior to the trial she told trial counsel about the events of November 15 and they had discussions about her being a witness, and contacting other witnesses. Ms. Jones said that she was at the trial and was prepared to testify but the lawyer decided not to call her; saying the juror would not believe family members. Ms. Jones also wanted to hire another attorney after the trial started.

Defendant's grandmother, Juanita James, had picked up the 8 year old child from school and brought her home about 4:15 PM. She was in the apartment briefly. Her daughter told her that James was in the shower. She heard the shower, knocked on

the bathroom door, got no response, and thereafter left the apartment. She did not see or speak with the defendant. She had spoke with defense counsel, was at the trial, and had expected to testify.

Defendant's girlfriend, Aneesah, testified that she needed to go to fill out a job application before 3:00 PM. About 2:00 PM she and James Jones left their hotel room. She drove James to his mother's place, left him there, and was able to reach her destination just before 3:00 PM. About an hour later she went back to the mother's house to pick up the defendant. She went inside the apartment for about a "minute". She and James left and went directly back to their room, ordered food and watched TV. Anessah testified that she was present at the trial but did not expect to be called to testify because the attorney told her that "she wasn't going to put me on the stand."

Trial counsel testified on December 19, 2003. After the defendant told her that he was at his mother's house and had been with his girlfriend most of the day on November 18, 2001, she spoke with defendant's mother, grandmother, and his girlfriend, Anessah, to develop an alibi defense. Counsel testified that Anessah was a key witness for the whereabouts of the defendant on November 15, 2001 at about 5:00 PM. There were problems with verifying the alibi because of "disjointed information" from the prospective witness. Defendant's grandmother (Juanita Jones) said that after picking up her granddaughter from school at 4:00 PM, driving about 10 minutes to the apartment, she was there a few minutes. Her daughter, Diane, was lying on the couch; she heard the sound of the water from the shower, but did not see the defendant. Diane Jones, recuperating from recent surgery, told her that she could not testify because she was an ex-Detroit police officer who had some ongoing concerns about her job. Eventually she told counsel that did not know about the time because she was sleeping due to the medication she was taking.

Counsel testified that Anessah Broadnax was the key witness to present the alibi evidence, but she was even more of a problem. Counsel said that she spent a significant number of hours with Broadnax starting with the day that the defendant was arrested. On one occasion she picked her up so that the two of the them could talk over breakfast at a local restaurant. She served Anessah Broadnax with a subpoena. Counsel discussed the matter and tried to get verification from Broadnax that the defendant was with her on November 15, 2001. Broadnax repeatedly and continuously told trial counsel: "I can't say that." Trial counsel discussed her concerns about Broadnax with defendant and defendant's mother in an effort to comfort and assuage any concerns that Broadnax had about testifying. After much consternation, trial counsel decided to not call her as an alibi witness.

At the "Ginther Hearing" trial counsel was asked why she did call the line up attorney, who had testified at the pretrial ("Wade") hearing, to testify at the trial and why she did not call the defendant to testify at the pretrial evidentiary hearing ("Wade hearing'). She proffered that she did want the risk that some evidence harmful to the defendant that came out on the examination of the line up attorney might come out during the trial. This and her concern about the defendant's credibility if he testified at the hearing that he had no prior contacts and did not know the victims were strategic decisions by trial counsel.

As the Supreme Court explained in People v. Smith, 456 Mich. 543, 556, 581 NW2d 654 (1998), claims of ineffective assistance of counsel are evaluated under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 SCt. 2052, 80 LEd.2d 674 (1984). See People v. Pickens, 446 Mich. 298, 521 NW2d 797 (1994). The standard adopted by the United States Supreme Court in Strickland is this:
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable. [ 466 U.S. at 687, 104 S.Ct. 2052.]

In this case, the defendant has satisfied none of these criteria. Defense counsel was faced with a choice: Putting before the jury possible perjured testimony and a witness who told her repeatedly that she could not or would not testify that the defendant was with her. Nothing in this evidence suggests that counsel was "deficient" in making this choice or that the selection significantly affected the outcome of the trial. Considering the present case in light of the "Strickland" standard, the court finds no ineffective assistance of counsel. The trial attorney exercised professional judgment in determining the defense strategy dictated by the circumstances, and what was best supported by the evidence. Counsel set in motion the initial steps for presenting such a defense on the very day of the defendant's arrest when she, as testified to at the "Ginther Hearing", met with Broadnax for about seven hours. She interviewed the other persons whom her client proffered as alibi witnesses and made every effort to develop defendant's alibi defense from the first day of defendant's arrest.

It is clear from counsel's testimony and from the objective facts revealed by the record that she provided representation at a professional level. She was concerned about what she called the "disjointed information" from the several persons the defendant told her were alibi witnesses. Counsel concerns are supported by the testimony at the "Ginther Hearing". There are glaring discrepancies in the time and events that purports to be the basis for the alibi.

The defendant testified that he arrived at his mother's apartment about 3:30 PM. His girlfriend, Anessah, had a 4:00 PM job interview, and they left their hotel room to allow time for her to drive him to his mother's place. He left his mother's house when Anessah came to pick him up at 5:30 PM.

Defendant's mother, Diane Jones, testified that the defendant and his girlfriend arrived about the same time as they did everyday. On cross examination she said that they arrived about 11 to 12 o'clock. She also said that the defendant was at her apartment for about two hours until 5 to 6 PM and while there he showered for about

an hour. Later in her testimony, she said that he left with Anessah at 6:30 to 7 PM. Juanita James testified that she did not see the defendant; but even if she had, her time factors have her taking the child home from school shortly after 4:00 PM and there for a few minutes. Thus beyond not seeing the defendant, her time of being there was at least one half hour or more before the shooting.

Anessah Broadnax testified that her job related matter was set for 3:00 PM. She and the defendant left the hotel room about 2:00 PM. She drove the defendant to his mother's and was able to reach the job place just before 3:00 PM. She was at the job related event for an hour, drove back to pick up the defendant, went in for about a minute, and she and the defendant drove back to the hotel room. Based on her time table, they left the mother's apartment about 4:30 PM.

Trial counsel's strategy was entirely reasonable on the basis of the "disjointed information" and obvious discrepancies about the defendant's alleged alibi. Strickland and Pickens teach that a defendant has been deprived of the effective assistance of counsel if "counsel's performance was deficient" and "the deficient performance prejudiced the defense." 466 US at 687, 104 S Ct 2052. In this instance, neither conclusion is supported by the record. Counsel's performance was entirely adequate, and in no respect prejudicial to the defendant.

For reason set forth in the present memoranda opinion and Order, and for such other reasons found in the records and materials of this case, the motion for a new trial is DENIED.

SO ORDERED.

_____
Thomas E. Jackson 22819
Judge, Third Judicial Circuit