# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES ALFRED JONES,

        Defendant-Appellant.

UNPUBLISHED
December 14, 2004

No. 244062
Wayne Circuit Court
LC No. 01-013853-01

---

Before: Whitbeck, C.J., and Saad and Talbot, JJ.

PER CURIAM.

## I. Overview

A jury convicted James Jones of first-degree murder,[1] three counts of assault with intent to murder,[2] possession of a firearm during the commission of a felony,[3] and felon in possession of a firearm[4] for his role as the driver in a drive-by shooting that left one person dead and one injured. The trial court sentenced Jones to life imprisonment for the first-degree murder conviction, fourteen years and three months to twenty-five years' imprisonment for each of the assault with intent to murder convictions, two years' imprisonment for the felony-firearm conviction, and two to five years' imprisonment for the felon in possession of a firearm conviction. Jones appeals as of right. We affirm.

## II. Basic Facts And Procedural History

On November 14, 2001, Jones was robbed near Ahmad Akins' house. Edward Martin and Phillip Mason, who knew Jones from the neighborhood, witnessed the robbery. According to Martin, Jones may have thought Martin and Mason were connected to the robbery.

---

[1] MCL 750.316.

[2] MCL 750.83.

[3] MCL 750.227b.

[4] MCL 750.224f.

The following afternoon, at approximately 5:00 p.m., approximately thirteen people were standing on the northwest corner of Heyden and Clarita in Detroit, in front of Akins' house, including Akins, Martin, Mason, Demetris Purdue and Joseph McCrimon. As Akins was entering the house, Jones slowly drove by in his green Oldsmobile Aurora with two other occupants, one in the passenger seat and one in the back seat. Martin stated he clearly saw the driver and identified him as Jones. The car stopped at the stop sign and the occupants grimaced at the crowd, but did not speak. The car then turned right onto Clarita and drove toward Evergreen Road.

About two or three minutes later, Akins walked out of the house and was standing on the front porch when the Oldsmobile drove by again and a person in the backseat fired 20 to 30 rounds from an AK-47 into the crowd. Akins was shot on the top of the head, but survived. Perdue was shot in the lower back and left leg, and died from his injuries. When police arrived on the scene, Martin identified Jones as the driver.

On November 16, 2001, a police officer went to Martin's house. The police showed Martin and McCrimon a photograph of Jones, who Martin identified as the driver of the vehicle. On November 18, 2001, Martin, Mason and McCrimon went to the police station and picked Jones out of the lineup.

Before the trial, the trial court held a *Wade*[5] hearing on Jones's challenge to the lineup. Jones argued that he was not similar in appearance to the other members of the lineup and that two of the identifiers were shown a photograph of Jones beforehand. The police had shown Martin and McCrimon the photograph of Jones because, prior to that, he had only been identified by his street name, "Fresh." Martin and McCrimon established that Jones, the man in the photograph, was Fresh. Following this, a lineup was arranged and Martin and McCrimon picked Jones out of the lineup as the driver of the vehicle. Dennis Shrewberry, the court-appointed attorney for the lineup, noted that Jones's hair was substantially different from the other participants. Martin identified Jones as the driver, but stated that he had not done any of the shooting. McCrimon also identified Jones, and stated that Martin had said that Jones had been driving. McCrimon stated that Jones was the person who a police officer "showed us the picture of." Jones was the only one in the lineup who was clean shaven, he had a different hairstyle than the other participants, and was the only one wearing a tee-shirt rather than a jacket.

Martin testified at the *Wade* hearing that before November 2001, he had known Jones from the neighborhood for about a year. During the shooting on November 15, 2001, Martin saw Jones driving the car. Police showed Martin a photograph of Jones and he identified the photograph as Jones. On November 18, 2001, Martin picked Jones out of a police lineup.

The trial court denied the motion to suppress the identification, stating that the showing of the photograph was for the legitimate reason of trying to verify the identity of the man who Martin identified as "Fresh," and that Jones had failed to meet the burden of proof that the lineup was improper. The court noted that there was no description of the driver of the vehicle that

---

[5] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

would set him apart in a lineup to lead to a misidentification.  The trial court found that an independent basis for the identification existed, including previous knowledge of Jones and Martin's testimony about what he witnessed during the shooting.

At the outset of trial, Jones's attorney indicated that Jones wished to retain a different attorney, and the following exchange took place:

> MS. FREDRICK (Defense Attorney): On Friday afternoon after we had brought Mr. Jones over for the purpose of trying to take a plea on the matter that fell through, the family and Mr. Jones advised me that they had the intent to retain Mr. Terrell Thomas to proceed with this matter.  And, in fact, I should prepare his documents to transfer to Mr. Thomas.

> I spoke to Mr. Thomas a couple of times Friday, Friday evening.  He is supposed to be here this morning.  Clearly, I understand that if he is not here, I need to proceed on Mr. Jones' behalf.  However, Judge, I think that in light of some of the circumstances of Friday, my advocacy has been diminished substantially by some of the conversations that took place on the voice mail messages and so forth and --

> THE COURT:  You have prepared this case for trial, right?

> MS. FREDRICK:  Yes, I have.

> THE COURT:  Are you prepared to go to trial?

> MS. FREDRICK:  Mr. Jones is waving me off.  I understand, Judge.

> THE COURT:  It is ten o'clock in the morning on a Monday morning for this trial.  This trial has been set for at least two or three months I believe.  I think I set this trial date back in March at the very least.  That is it [sic] was set for trial.

> MS. FREDRICK:  Yes, sir.

> THE COURT:  And we have a jury waiting here.  It is ten o'clock in the morning.  This court has not been contacted by any other lawyer or attorney for any kind of appearance or any kind of request about entering this case.

> MS. FREDRICK:  I understand, Judge.

> THE COURT:  We are going to proceed to trial with this case.  So, bring in the jury please.

After the jury returned its guilty verdicts, Jones moved for an evidentiary hearing and a new trial on the basis of ineffective assistance of counsel, arguing that his lawyer failed to present his alibi defense, failed to call the lineup attorney to challenge the identification testimony at trial, and failed to call Jones as a witness at both the *Wade* hearing and the trial itself.

At the *Ginther*[6] hearing, Jones testified that on November 18, 2001, he discussed with defense counsel, Leesa Fredrick, the defense that he was at the home of his mother, Diane Jones, at the time in question. Jones stated that his ex-girlfriend, Anessah Broadnax, dropped him off at his mother's house at 3:20 or 3:30 p.m. and he took a shower. Jones stated that when he got out of the shower, Diane Jones; his grandmother, Juanita James; his sister, Paris; and a neighbor, Regina, were at the house. Jones left the house at about 5:30 or 6:00 p.m. Broadnax went into the house to get him, they ate at the house, then they left. Jones expected Fredrick to call Jones, James, Broadnax, and Regina as alibi witnesses. Jones learned four days before trial that she was not going to present an alibi defense because juries seldom believe alibis that depend on family members. Jones stated that he chose not to testify after he was instructed not to testify.

Diane Jones testified that she was home on November 15, 2001, recovering from a November 3, 2001, surgery, when Jones came to her house to take care of her. Diane Jones could not recall what time Jones arrived in the afternoon, but stated that he stayed until after 5:00 or 6:00 p.m. Diane Jones stated that while Jones was there, he showered for over an hour, which was normal for him, and prepared something to eat after Paris came home from school. Diane Jones stated that James knocked on the bathroom door while Jones was in the shower and "said something funny, and he hollered back," then James left. Diane Jones stated that Broadnax returned at approximately 6:30 or 7:00 p.m. to pick up Jones. Diane Jones stated that she paid Fredrick (referring to the court costs). The first day of trial, Jones told the court that he did not want Fredrick to represent him, but had a new attorney who was waiting outside the courtroom to represent him.

Juanita James went to Diane Jones' house on November 15, 2001, at approximately 4:30 p.m. to drop off Paris Jones from school. When she arrived there, Diane Jones told James that Jones was in the shower. James heard the shower running, knocked on the door and said, "hey" but did not get a response. James was there for about ten minutes and left without seeing Jones.

Anessah Broadnax, Jones's then girlfriend, stated that she and Jones left for Diane Jones' house at approximately 2:00 p.m. on November 16, 2001. Broadnax dropped Jones off, then went to Southfield to apply for a job. She arrived in Southfield at approximately 3:00 p.m., stayed for approximately an hour, then returned to Diane Jones' house to pick up Jones. She and Jones went back to Marvin Gardens where they were staying.

Fredrick testified that she had discussed an alibi defense with Jones that included Diane Jones and Broadnax. Fredrick stated that on the night that Jones was taken into custody, she spent over seven hours with Broadnax, who was very emotional and repeatedly told Fredrick that she could not and would not testify to the alibi defense. Fredrick interpreted this to mean that Broadnax was concerned either about lying in front of the jury or having a breakdown that would make it appear that she was not being truthful.

After indecision about whether Broadnax should testify, Fredrick decided not to place Broadnax on the stand. Frederick considered an alibi defense without Broadnax testifying, but

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

concluded it was too disjointed because Diane Jones could not testify to when Jones arrived at the house and James never saw Jones at the house, but only heard the shower water running. Further, Diane Jones told Fredrick that she could not testify because she was a former police officer who had some residual issues with the police department.  Fredrick stated that she continuously spoke to Jones about not being able to use the alibi defense unless Broadnax gained the courage to testify.  Broadnax was present during trial, and Fredrick asked her about testifying again, with the same response.  Fredrick forwarded a motion to withdraw as defense counsel to be replaced by Terrell Thomas, but the trial court denied it.

On January 15, 2004, the trial court denied the motion for a new trial, stating:

> It is clear from counsel's testimony and from the objective facts revealed by the record that she provided representation at a professional level.  She was concerned about what she called the "disjointed information" from the several persons the defendant told her were alibi witnesses.  Counsel concerns are supported by the testimony at the "Ginther Hearing".  There are glaring discrepancies in the time and events that purports to be the basis for the alibi.

### III.  Request For A Continuance

#### A.  Standard Of Review

We review the trial court's decision regarding a defendant's request for a continuance for an abuse of discretion.[7]  An abuse of discretion "exists where an unprejudiced person, considering the facts on which the trial court acted, would conclude that there was no justification or excuse for the ruling made."[8]  We review de novo the question whether a defendant was denied his constitutional right to present a defense.[9]  However, because Jones did not raise the issue whether the trial court's refusal to grant a continuance would deny him the right to present his alibi defense, our review is for plain error that affected Jones' substantial rights.[10]

#### B.  Right To Present A Defense

Jones argues that the trial court abused its discretion in refusing to grant a continuance for Jones to obtain new counsel, and that his Constitutional right to present a defense was denied because his counsel would not present an alibi defense.  To appeal to the trial court's discretion to allow a continuance, "a defendant must show both good cause and diligence."[11]

---

[7] *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003); *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000).

[8] *People v Ullah*, 216 Mich App 669, 673; 550 NW2d 568 (1996).

[9] *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

[10] *People v Carines*, 460 Mich 750, 761-764, 774; 597 NW2d 130 (1999).

[11] *Coy, supra* at 18, citing *People v Taylor*, 159 Mich App 468, 489; 406 NW2d 859 (1987).

"Good cause" factors include "whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments."[12]

In this case, Jones was asserting his constitutional right to counsel.[13]   Jones also had a legitimate reason for asserting his right, because he had a bona fide difference of opinion regarding a fundamental trial tactic,[14] specifically, whether to call witnesses in support of an alibi defense.   However, because Jones did not attempt to substitute counsel until the day of trial, Jones did not show diligence.   Jones stated that he learned only four days before trial that Fredrick was not going to present an alibi defense; however, Fredrick testified that she continuously told Jones that she would not be able to use the alibi defense if Broadnax would not testify, which Broadnax had consistently told Fredrick she was unable and unwilling to do. Under these circumstances, we cannot conclude that the trial court's refusal to grant a continuance was an abuse of discretion.

Jones argues that the denial of the continuance to find counsel who would present his alibi defense resulted in the denial of his constitutional right to present a defense.   Under the facts of this case, we conclude that the trial court's decision did not constitute plain error affecting Jones's substantial rights.   Defense counsel vigorously questioned witnesses that the prosecution called, gave an opening statement and a closing argument of Jones's case, and suggested that the witnesses may have robbed him the day before the shooting and are now incorrectly identifying Jones as the shooter.   Although defense counsel refused to present Jones's alibi defense, in light of the weakness of that defense, presenting it was unlikely to have changed the outcome of the trial.   We conclude that Jones's inability to present his alibi defense was not outcome determinative, and therefore reversal is not warranted.

### IV.  Challenge To Photographic Lineup

#### A.  Standard Of Review

The trial court's decision to admit identification evidence is reviewed for clear error.[15] Clear error exists when a reviewing court is left with the definite and firm conviction that a mistake has been made.[16]

---

[12] *Id.*, quoting *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992).

[13] US Const Ams VI, XIV; Const 1963, art 1, § 20; *People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999).

[14] See *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991).

[15] *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993); *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002).

[16] *Kurylczyk*, *supra* at 303.

### B. Legal Standards

"A photographic identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification."[17]  "When 'the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person.'"[18]  Even if a witness has been exposed to an impermissibly suggestive identification procedure, however, that witness' in-court identification may still be admitted if "the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification."[19]  Thus, if the identification procedure was invalid, this Court should determine whether the victim had an independent basis to identify the defendant.[20]  "The independent basis inquiry is a factual one," and the validity of the in-court identification "must be viewed in light of the 'totality of circumstances.'"[21]

The following eight factors should be considered in determining whether an independent basis for the identification existed:  (1) prior relationship with or knowledge of the defendant; (2) the opportunity to observe the offense; (3) the length of time between the offense and the disputed identification; (4) accuracy or discrepancies in the pre-lineup description and the defendant's actual description; (5) a previous proper identification or failure to identify the defendant; (6) any previous identification of another person as the defendant; (7) the nature of the offense and the physical and psychological state of the victim; and (8) any idiosyncratic or special features of the defendant.[22]

### C. Applying The Standards

We conclude that the trial court did not clearly err in admitting the identification evidence.  The police had shown Martin and McCrimon the photograph of Jones not to determine whether he resembled the driver but whether he was the man they referred to as "Fresh."  Martin and McCrimon later picked Jones out of a lineup as the driver of the vehicle.  Although Jones's hairstyle and dress differed from the other members of the lineup, as the trial court found, there was an independent basis for the identification because Martin knew Jones and observed the offense.  Martin had known Jones from the neighborhood for about a year and recognized him as the driver of the car during the November 15, 2001 shooting.  Therefore, Jones's argument fails.

---

[17] *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998), citing *Kurylczyk*, supra at 302; *Simmons v United States*, 390 US 377, 384; 88 S Ct 967; 19 L Ed 2d 1247 (1968).

[18] *Id*., quoting *People v Anderson*, 389 Mich 155, 178; 205 NW2d 461 (1973).

[19] *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998).

[20] *Gray*, *supra* at 114-115.

[21] *Id*. at 115, quoting *Neil v Biggers*, 409 US 188, 199; 93 S Ct 375; 34 L Ed 2d 401 (1972).

[22] *Gray*, *supra* at 115-116; *People v Kachar*, 400 Mich 78, 95-96; 252 NW2d 807 (1977).

V.  Failure To Disqualify Trial Judge

A.  Standard Of Review

Because Jones did not request at trial that the trial judge disqualify himself, this issue his unpreserved, and he therefore must establish that plain error occurred that affected his substantial rights to warrant reversal.[23]

B.  The Trial Judge's Comment

MCR 2.003(B)(1) provides for disqualification of a judge who cannot impartially hear a case because he is "personally biased or prejudiced for or against a party or attorney."  Jones argues that the trial judge was biased against him as evidenced by the following statement he made at the arraignment:  "This is really disgusting here.  I put this person on probation, what, three or four months ago back in April.  I put him on probation for two years for a loaded weapons charge and he goes out and kills people."  Defense counsel reminded the trial judge that Jones was "still presumed innocent," to which he responded, "I don't need that argument."

While we find the trial judge's statement that Jones had "gone out and killed people" troubling, we conclude that his failure to disqualify himself does not amount to plain error.  The statement appears to be an isolated expression of frustration and disappointment at finding Jones re-entangled in the court system so soon after the trial judge had placed him on probation, and does not seem to demonstrate any sort of personal animus against Jones.

Further, Jones has not demonstrated that the trial judge's failure to disqualify himself affected his substantial rights.  The challenged statement was not made in the presence of the jury; thus, it could not have affected their verdict.  Jones asserts that the trial judge demonstrated his bias by denying Jones' motion to suppress the identification, denying most of Jones' objections, and refusing to allow Jones to substitute counsel.  However, as discussed, the trial court properly denied the motion to suppress the identification under the governing legal standards, and it is clear from the record that the trial court's refusal to grant the motion to substitute counsel was based on untimeliness, not bias or prejudice.  The fact that the trial judge denied most of Jones' objections is of no import unless Jones can demonstrate that these objections had legal merit and were erroneously overruled, which Jones does not do.  Therefore, we conclude that reversal is not warranted.

Affirmed.

/s/ William C. Whitbeck
/s/ Henry William Saad
/s/ Michael J. Talbot

---

[23] *Carines*, *supra* at 763; *People v Grant*, 445 Mich 535, 548-549; 520 NW2d 123 (1994).

Approved, SCAO

White - Court
Blue - Corrections
Green - Corrections (for return)

~~nary~~ - State Police
Pink - Defendant
Goldenrod - Prosecutor

| STATE OF MICHIGAN THIRD JUDICIAL COURT CRIMINAL DIVISION | JUDGMENT OF SENTENCE COMMITMENT TO CORRECTIONS DEPARTMENT | CASE NO. 01-013853-01 |
|---|---|---|

ORI
MI-
Police Report No.   **1441 ST. ANTOINE     DETROIT, MI 48226**

Court address

Court telephone no.
**313-224-5435**

| THE PEOPLE OF THE STATE OF MICHIGAN | v | Defendant's name, address, and telephone no. JAMES JONES 16702 LAHSER #21 DETROIT, MI 48219 |
|---|---|---|

| CTN 01-126599 | SID 1771132M | DOB 7-18-78 |
|---|---|---|

| Prosecuting attorney name MICHAEL DUGGAN          Bar no. P 35893 | Defendant attorney name LEESA FREDERICKS          Bar no. P 53372 |
|---|---|

## THE COURT FINDS:

1. The defendant, represented by counsel, was found guilty on _____ **5-22-02** _____ of the crimes stated below:

Date

*Plea: use "G" for guilty plea; "NC" for nolo contendere; "MI" for guilty but mentally ill.

| Count | CONVICTED BY Plea* | Court | Jury | CRIME | CHARGE CODE(S) MCL citation/PACC Code |
|---|---|---|---|---|---|
| 1 | | | G | MURDER 1ST | 750.316-A |
| 2 | | | G | ASLT WI MRD | 750.83 |
| 3 | | | G | ASLT WI MRD | 750.83 |
| 4 | | | G | ASLT WI MRD | 750.83 |
| 5 | | | G | FA POSS BY FLN | 750.224F |
| 6 | | | G | FELONY FIREARM | 750.227B-A |

☐ 2. The conviction is reportable to the Secretary of State under MCL 257.732 or MCL 281.1040.
The defendant's driver license number is: _____

☐ 3. HIV testing was ordered on _____. Confidential test results are on file.

Date

## IT IS ORDERED:

4. Defendant is sentenced to custody of Michigan Department of Corrections. This sentence shall be executed immediately.

| Count | SENTENCE DATE | MINIMUM Years | Mos. | Days | MAXIMUM Years | Mos. | DATE SENTENCE BEGINS | JAIL CREDIT Mos. | Days | OTHER INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 6-20-02 | NATURAL | LIFE | — | — | — | 11-15-03 | — | — | |
| 2 | 6-20-02 | 14 | 3 | — | 25 | — | 11-15-03 | — | — | |
| 3 | 6-20-02 | 14 | 3 | — | 25 | — | 11-15-03 | — | — | |
| 4 | 6-20-02 | 14 | 3 | — | 25 | — | 11-15-03 | — | — | |
| 5 | 6-20-02 | 2 | — | — | 5 | — | 11-15-03 | — | — | |
| 6 | 6-20-02 | 2 | — | — | — | — | 6-20-02 | — | 218 | |

☐ Defendant shall pay restitution of $_____. If a cash bond/bail was personally posted by the defendant,
Payment toward restitution is to be first collected out of that bond/bail and allocated as specified under MCL 775.22.

☐ 5. Sentence(s) to be served consecutively/concurrently to:
☐ each other.          ☐ Case Numbers: _____

6. Defendant shall pay a $60.00 assessment for the Crime Victim Rights Fund.

7. Defendant shall pay a $150.00 assessment for forensic lab test.

☒ 8. Court recommendation: CTS 1-5 RUN CONCURRENT BUT CONSECUTIVE TO CT 6.

6-20-02
Date

Judge THOMAS E. JACKSON          P 22819     Bar no.

Under MCL 769.16a the clerk of the court shall send a copy of this order to the Michigan State Police Central Records Division to create a criminal history record.

I certify that this is a correct and complete abstract from the original court records. The sheriff shall, without needless delay, deliver defendant to the Michigan Department of Corrections at a place designated by the department.

(SEAL)

Deputy court clerk

MCL 765.15(2); MSA 28.902(2), MCL 769.16a; MSA 28.1086(1), MCL 775.22; MSA 28.1259, MCL 780.766; MSA 28.1287(766)

| STATE OF MICHIGAN 3rd JUDICIAL CIRCUIT WAYNE COUNTY | CLAIM OF APPEAL AND ORDER APPOINTING COUNSEL | CASE NO. AND SUFFIX 01-13853      01 |
|---|---|---|

Court Address
1441 ST. ANTOINE DETROIT, MI 48226

Court Telephone No
(313) 224-2519

**People of THE STATE OF MICHIGAN**

v

| Defendant Name, Last | First | Middle |
|---|---|---|
| JONES | JAMES | |

Date of Birth, Address, and inmate number (if known)
THUMB CORRECTIONAL FACILITY
3225      JOHN CONLEY DRIVE
LAPEER                      MI      48446
07-18-1978
362351

### Offense Information / Terms of Incarceration / Intermediate Sanctions

| Date | Description | PACC Code | H | C | A | S | Minimum Y | M | D | Maximum Y | M | D | K | P | J | Probation Y | M | D | R | F | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11-15-2001 | HOMICIDE/MURDER 1ST DEG | 750.316-A | | | | | LIFE | | | | | | | X | | | | | | | |
| 11-15-2001 | ASSAULT WITH INTENT TO M | 750.83 | | | | | 14 | 3 | | 25 | | | | X | | | | | | | |
| 11-15-2001 | ASSAULT WITH INTENT TO M | 750.83 | | | | | 14 | 3 | | 25 | | | | X | | | | | | | |
| 11-15-2001 | ASSAULT WITH INTENT TO M | 750.83 | | | | | 14 | 3 | | 25 | | | | X | | | | | | | |
| 11-15-2001 | ASSAULT WITH INTENT TO M | 750.83 | | | | | 14 | 3 | | 25 | | | | X | | | | | | | |
| 11-15-2001 | WEAPONS/FIREARMS/POSSE | 750.224F | | | | | 2 | | | 5 | | | | X | | | | | | | |
| 11-15-2001 | WEAPONS/FELONY FIREARM | 750.227B-A | | | | | 2 | | | 2 | | | X | X | | | | | | | |

H=Habitual  C=Conspiracy  A=Attempt  S=Solicitation  Y=Year  M=Month  D=Day  K=Consecutive  P=Prison  J=Jail  R=Restitution  F=Fine  O=Other

The defendant claims an appeal from a final judgment or order entered on  in the 3rd Circuit Court, WAYNE County, Michigan by Judge THOMAS JACKSON 22819.  Copies of the final judgment or order being appealed and docket entries are attached for the Court of Appeals, appointed counsel, and Michigan Appellate Assigned Counsel System.

On 06-28-2002 the defendant filed a request for appointment of counsel and a declaration of indigency.

**IT IS ORDERED:**
Name of Appellate Counsel
SADO

645 GRISWOLD, PENOBSCOT BLDG. SUITE 3300
Address

City, State, Zip
DETROIT, MI 48226

313-256-9833
Telephone No.

Bar No.
1

is appointed counsel for the defendant in post-conviction proceedings.  If appointed counsel cannot or will not accept this appointment, counsel shall notify the court immediately.

The court reporter(s)/recorder(s) shall file with the trial court clerk the transcripts indicated below and any other transcripts requested by counsel in this case not previously transcribed.  Transcripts shall be filed within 28 days for pleas or 91 days for trials from the date ordered or requested [MCR 7.210(B)].  Reporter(s)/recorder(s) shall be paid as provided by law.

| TRANSCRIPTS ORDERED | REPORTER/RECORDER NAME | OTHER DESCRIPTION | NUMBER | PROCEEDING DATE |
|---|---|---|---|---|
| SENTENCE | CLARA SHAH | | | 06-20-2002 |
| JURY TRIAL | CLARA SHAH | 21002 | | 05-20-2002 |
| JURY TRIAL | CLARA SHAH | | | 05-21-2002 |
| JURY TRIAL | CLARA SHAH | | | 05-22-2002 |

The clerk shall immediately send to counsel a copy of the transcripts ordered above or requested by counsel as they become available.  The clerk shall also forward documents upon request by counsel. [MCR 6.433]

9/23/02
Date

TIMOTHY M. KENNY
Judge

23009
Bar No.

### CERTIFICATE OF MAILING

I certify that on this date I mailed a copy of this claim of appeal to appointed counsel, defendant, court reporter(s)/recorder(s), prosecutor, Court of Appeals, and Michigan Appellate Assigned Counsel System (MAACS).  I also mailed a copy of the final judgment or order being appealed and docket entries to appointed counsel, the Court of Appeals, and MAACS.  I also mailed a copy of the defendant's request for appointment of counsel to appointed counsel, the prosecutor, and MAACS.

9/23/02
Date

Signature

CC403 (12/96)

Page 1 of 1

# STATE OF MICHIGAN

## IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

                  Plaintiff-Appellee,

-vs-

**JAMES JONES**

               Defendant-Appellant.

_____/

**WAYNE COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee

_____

**STATE APPELLATE DEFENDER OFFICE**
Attorney for Defendant-Appellant

_____

**Court of Appeals No.** 244062

**Lower Court No.** 01-13853-01

---

### APPELLANT'S BRIEF ON APPEAL
### *(ORAL ARGUMENT REQUESTED)*

**STATE APPELLATE DEFENDER OFFICE**

**BY:**    **JACQUELINE J MCCANN (P58774)**
        **Assistant Defender**
        3300 Penobscot Building
        645 Griswold
        Detroit, Michigan  48226
        (313) 256-9833

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ i

STATEMENT OF JURISDICTION ................................................ ii

STATEMENT OF QUESTIONS PRESENTED.................................. iii

STATEMENT OF FACTS ............................................................. 1

I.   THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED MR. JONES'
     FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO COUNSEL OF CHOICE
     WHEN IT REFUSED TO ALLOW MR. JONES TO FIRE HIS RETAINED
     COUNSEL AND GRANT A CONTINUANCE TO ALLOW HIM TO FINISH
     RETAINING OTHER COUNSEL.   THE TRIAL COURT'S DECISION ALSO
     RESULTED IN THE DENIAL OF MR. JONES' CONSTITUTIONAL RIGHTS TO
     PRESENT A DEFENSE, WHERE CURRENT COUNSEL WAS DECLINING TO
     RUN THE ALIBI DEFENSE THAT MR. JONES WANTED PRESENTED. ............... 6

SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT ..................... 12

JJM*trimmed COA Brief.doc*19477; May 21, 2004
James Jones

# <u>TABLE OF AUTHORITIES</u>

## CASES

<u>Faretta</u> v <u>California</u>, 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975)......................................... 8

<u>Flanagan</u> v <u>United States</u>, 465 US 259; 104 S Ct 1051; 79 L Ed 2d 288 (1984).......................... 11

<u>People</u> v <u>Charles O. Williams</u>, 386 Mich 565; 194 NW2d 337 (1972) ................................. 6, 9, 11

<u>People</u> v <u>Johnson</u>, 215 Mich App 658 (1996)................................................................................. 11

<u>People</u> v <u>Jones</u>, 260 Mich App 424; __ NW2d __ (2004) ............................................................ 6

<u>People</u> v <u>Mack</u>, 190 Mich App 7; 475 NW2d 830 (1991) ............................................................. 6

<u>People</u> v <u>Sinistaj</u>, 184 Mich App 191; 457 NW2d 36 (1990) .......................................................... 8

<u>Powell</u> v <u>Alabama</u>, 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932) .................................................. 8

<u>Washington</u> v <u>Texas</u>, 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967)..................................... 9

<u>Wilson</u> v <u>Mintzes</u>, 761 F2d 275 (CA 6, 1985).............................................................................. 8

## CONSTITUTIONS, STATUTES, COURT RULES

US Const, amends VI, XIV ............................................................................................................ 8

Const 1963, art 1, secs 13; 20 ....................................................................................................... 8

## <u>STATEMENT OF JURISDICTION</u>

Defendant-Appellant was convicted in the Wayne County Circuit Court on May 22, 2002 at the conclusion of a jury trial.  The Circuit Court entered a Judgment of Sentence on June 20, 2002.  The Circuit Court entered a Claim of Appeal on September 23, 2002, pursuant to the indigent defendant's request for the appointment of appellate counsel filed June 28, 2002, as authorized by MCR 6.425(F)(3).  On May 8, 2003, pursuant to MCR 7.208(B), Defendant-Appellant timely filed a Motion for New Trial in the Circuit Court.  The Circuit Court held an evidentiary hearing on the motion on June 27, 2003 and December 19, 2003.  On January 15, 2004, the Circuit Court entered an Opinion denying the Motion for New Trial.  This Court has jurisdiction in this appeal as of right provided for by Mich Const 1963, art 1, §20, pursuant to MCL 600.308(1), MCL 770.3, MCR 7.203(A), MCR 7.204(A)(2)(c).

## <u>STATEMENT OF QUESTIONS PRESENTED</u>

I.   **DID THE TRIAL COURT ABUSE ITS DISCRETION AND DENY MR. JONES'
FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO COUNSEL OF CHOICE
WHEN IT REFUSED TO ALLOW MR. JONES TO FIRE HIS RETAINED
COUNSEL AND GRANT A CONTINUANCE TO ALLOW HIM TO FINISH
RETAINING OTHER COUNSEL?  DID THE TRIAL COURT'S DECISION ALSO
RESULT IN THE DENIAL OF MR. JONES' CONSTITUTIONAL RIGHTS TO
PRESENT A DEFENSE, WHERE CURRENT COUNSEL WAS DECLINING TO
RUN THE ALIBI DEFENSE THAT MR. JONES WANTED PRESENTED?**

Trial Court answers, "No".

Defendant-Appellant answers, "Yes".

## **STATEMENT OF FACTS**

Defendant-Appellant James Jones was convicted by a jury of first-degree premeditated murder, MCL 750.316; 3 counts of assault with intent to murder, MCL 750.83; felon in possession of a firearm, MCL 750.224f; and felony firearm, MCL 750.227b, before the Honorable Thomas E. Jackson, in the Wayne County Circuit Court, on May 22, 2002.[1]  Judge Jackson sentenced Mr. Jones to the mandatory term of life without the possibility of parole, three terms of 14 years and 3 months to 25 years for the assault convictions, 2 to 5 years for the felon in possession offense, and the consecutive 2 year term for felony firearm, on June 20, 2002.  (S 6).

Mr. Jones was accused of being the driver of a green Aurora in a drive-by shooting directed at a group of young men on the corner of Heyden and Clarita streets, in Detroit, on November 15, 2001, around 5 pm.  (T II 9-18, 46-52).  The shooting resulted in the death of Demetrius Perdue and injury to Ahmad Akins.  (T II 16, 18-19, 52-53, 89-90).

At trial, some of the young men from the group on the corner testified regarding the identity of the driver.  Edward Martin identified Mr. Jones as the driver on the initial pass and on the shooting pass.  (T II 9-15, 21-23).  Joseph McCrimon identified Mr. Jones as the driver on the initial pass and testified that he did not observe the driver on the shooting pass.  (T II 46-50, 56-57)  Both claimed to have been familiar with Mr. Jones from the neighborhood.  (T II 5-7, 25-26, 42-43, 61, 67).  Martin claimed to have smoked with him approximately one day before the shooting.  (T II 25-26).  Phillip Mason testified at trial that he could not identify the driver, but on the day of the shooting he had given the police a description of the driver that did not match Mr. Jones.  (T II 75, 80-81).  Mason testified he gave that description because Martin had told

1

him the driver was "Fresh", who drove a gold Caprice.  (T II 77-78, 80-81).  So Mason had described the individual he knew to drive a gold Caprice.  (T II 80-81).  The proposed motive for the shooting was the allegation that Mr. Jones believed some of the individuals on that corner were involved in robbing him the day before.  (T I 127-128; T II 7-8, 26-27, 37-38, 43-44, 61, 81; T III 56).

Prior to trial, the Court held a <u>Wade</u>[2] evidentiary hearing on the defense's motion to suppress the identifications by the witnesses.[3]  A day or two after the shooting, Officer Joanne Miller showed the young men a single photo, that of Mr. Jones.  (WH I 12, 15-19; WH II 6, 8-10).  Martin and McCrimon picked him out of a line-up the following day.  (WH I 23-24, 47-48; T II 7).  According to the line-up attorney, Mr. Jones appeared substantially different from all of the other line-up participants.  (WH I 46-47, 50-52).  According to the line-up attorney, though McCrimmon picked Mr. Jones out of the line-up, when asked what Mr. Jones had done, McCrimmon replied, "[N]othing.  The guy that just left out of here [Martin] said he was driving."  (WH I 48).  McCrimmon also stated at that time that Mr. Jones was the individual that Miller showed us a picture of.  (WH I 48, 50).  The Court denied the motion to suppress the identifications, finding that it was not improper to show the witnesses the photo of Mr. Jones, that it was not convinced the line-up was improperly suggestive, and that, regardless, there was an independent basis for the identifications.  (WH II 24-28).

On the first day of trial, prior to jury selection, Defense Counsel Leesa Frederick notified the Court that Mr. Jones was firing her, that his family was retaining another attorney, Terrell

---

[1]   The trial transcript volumes will be referenced as follows:  "T I" = May 20, 2002; "T II" = May 21, 2002; and "T III" = May 22, 2002.
[2]   <u>United States</u> v <u>Wade</u>, 388 US 218 (1967)
[3]   The volumes of transcript of the <u>Wade</u> Evidentiary Hearing will be referenced as follows: "WH I" = March 8, 2002; and "WH II" = April 5, 2002.

Thomas[4], and that she had spoken with that attorney and expected him to be there.[5]  (T I 3-4).
The Court ordered that trial would proceed and that Ms. Frederick would continue as counsel.  (T I 4).

      After jury selection, the Prosecutor told the Court that he had no witnesses present to call to the stand.  In response, the Court refrained from swearing the jury in, had the attorneys give their opening statements, and then adjourned for the day.[6]  (T I 115-137).

      Following sentencing, Mr. Jones appealed by right.  Mr. Jones moved for new trial on the grounds that he was denied the effective assistance of trial counsel, where trial counsel failed to present his alibi defense, failed to call the line-up attorney to discredit the identification testimony at trial, and failed to call Mr. Jones at the <u>Wade</u> hearing and at trial.  (See Motion for New Trial in lower court record).  Judge Jackson held a <u>Ginther</u>[7] evidentiary hearing on the motion on June 27, 2003 and December 19, 2003.[8]  On January 15, 2004, Judge Jackson entered an Opinion denying the motion for new trial.

      At the <u>Ginther</u> hearing, Mr. Jones testified that he did not become aware that Defense Counsel Frederick was not going to present his alibi defense until four days before trial.  (GH I 11, 23).[9]  Mr. Jones' mother testified that when Mr. Jones' dissatisfaction with Ms. Frederick was brought up at trial, the other attorney was outside waiting for them to retain him.  (GH I 36-37, 44-45).

---

[4] P54809
[5]  Ms. Frederick was retained, rather than appointed.  (Appearances dated November 18, 2001 and November 29, 2001; docket entries).
[6]  The Court had the jury sworn at the beginning of the second day of trial.  (T II 4).
[7]  <u>People</u> v <u>Ginther</u>, 390 Mich 436 (1973).
[8]  Trial counsel was unavailable until December due to serious illness and the necessary course of treatment.
[9]  The transcript volumes of the <u>Ginther</u> Evidentiary Hearing will be referenced as:  "GH I" = June 27, 2003; and "GH II" = December 19, 2003.

At the Ginther hearing, Ms. Frederick testified that she eventually decided not run the alibi because the main alibi witness, Mr. Jones' girlfriend Aneesah Broadnax, would tell her that she could not testify. (GH II 8-9). Ms. Frederick testified that she interpreted Ms. Broadnax's statements and demeanor as meaning either that she could not truthfully testify to the alibi or that she was a nervous wreck. (GH I 9-11). Ms. Frederick was afraid that Ms. Broadnax would have a breakdown on the stand and that that would result in the jury finding her incredible. (GH I 9-11). Ms. Frederick spent a lot of time trying to work with Ms. Broadnax, who had a nervous personality. (GH I 10-11, 15). Ms. Frederick testified that she told Mr. Jones that they needed Ms. Broadnax and encouraged him to explain to Ms. Broadnax that if it was a courage issue, then she needed to get her courage up. (GH I 13). At times, Ms. Frederick felt she would call Mr. Broadnax and then at times she felt she should not. Finally, she decided that she would not call her. (GH II 10-11). Ms. Frederick believed that without Ms. Broadnax's testimony the alibi would be too disjointed and incomplete. (GH II 11-12). Ms. Frederick also indicated that Mr. Jones' mother did not really want to testify because she was a former police officer and was having residual issues with the police department and because she had been medicated at the time. (GH II 12-13).  Ms. Frederick testified that Mr. Jones and his family wanted to release her as his attorney and wanted to hire Terrell Thomas. So, she made that motion. (GH I 14).

At the Ginther hearing, Mr. Jones' alibi was presented. Mr. Jones, his mother Diane Jones, his grandmother Juanita James, and Ms. Broadnax testified. On November 15, 2001, Mr. Jones and Ms. Broadnax were residing at a hotel, Marvin Gardens. (GH I 9, 57-58, 60, 62). Ms. Broadnax drove Mr. Jones to his mother's apartment, dropped him off, and went to a job interview, where she took a few employment tests. (GH I 8, 56-57, 60). [Mr. Jones testified that Ms. Broadnax dropped him off around 3:20 or 3:30 pm. (GH I 8). His mother Diane Jones

testified that he came over in the afternoon; she could not remember the exact time because she was medicated; it could have been 11 am or noon.  (GH I 32-33, 38-39).  Ms. Broadnax testified that they left the hotel at 2 pm, she dropped Mr. Jones off at his mother's home, and she got to the interview just before 3 pm, in time to take the test.  (GH I 57, 60-61).]  Mr. Jones' mother was recuperating from surgery performed November 3rd.  (GH I 9, 31, 51).  While at his mother's apartment, Mr. Jones took a long shower.  (GH I 8, 33).  While Mr. Jones was in the shower, his grandmother Ms. James brought his little sister home from school around 4:15 or 4:30 pm.  (GH I 32-34, 40, 48).  Diane Jones told Ms. James that Mr. Jones was in the shower.  Ms. James knocked on the shower and called out to him, but she did not see him.  (GH I 34, 49-50, 52).  Ms. James left shortly thereafter.  (GH I 33-34, 49-50, 54).  Ms. Broadnax returned and picked Mr. Jones up.  (GH I 35, 57).  [Mr. Jones testified that they left his mother's place between 5:30 and 6 pm. (GH I 8).  Diane Jones testified that they left about 6:30 or 7 pm.  (GH I 35).  Ms. Broadnax testified that she was at the job interview for probably about an hour and then drove back to get Mr. Jones; it was kind of dark out when they left his mother's home.  (GH I 57-58, 63).]  Mr. Jones and Ms. Broadnax returned to their hotel room, where they remained for the rest of night.  (GH I 9, 57-58).

Additional facts may be discussed where pertinent to the issue raised herein.

I.      **THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED MR. JONES' FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO COUNSEL OF CHOICE WHEN IT REFUSED TO ALLOW MR. JONES TO FIRE HIS RETAINED COUNSEL AND GRANT A CONTINUANCE TO ALLOW HIM TO FINISH RETAINING OTHER COUNSEL. THE TRIAL COURT'S DECISION ALSO RESULTED IN THE DENIAL OF MR. JONES' CONSTITUTIONAL RIGHTS TO PRESENT A DEFENSE, WHERE CURRENT COUNSEL WAS DECLINING TO RUN THE ALIBI DEFENSE THAT MR. JONES WANTED PRESENTED.**

## Standards of Review

Decisions regarding the substitution of counsel and requests for continuances are reviewed for an abuse of discretion. <u>People</u> v <u>Charles O. Williams</u>, 386 Mich 565, 571-572  194 NW2d 337 (1972); <u>People</u> v <u>Mack</u>, 190 Mich App 7, 14; 475 NW2d 830 (1991).

Constitutional issues are reviewed de novo. <u>People</u> v <u>Jones</u>, 260 Mich App 424, 427; __ NW2d __ (2004) The rights to counsel of choice and to present a defense are constitutional issues.

## Discussion

At the opening of the first day of trial, Monday, May 20, 2002, prior to jury selection, Defense Counsel Leesa Frederick notified the Court that Mr. Jones wanted to fire her and retain other counsel:

| | |
|---|---|
| Counsel: | Morning, Your Honor.  Leesa Frederick, on behalf of the defendant, Your Honor.<br>May we approach the bench? |
| Court: | Anything you have to say, say it on the record, Ms. Frederick. |
| Counsel: | Sure.  **On Friday afternoon** after we had brought Mr. Jones over for the purpose of trying to take a plea on the matter that fell through, **the family and Mr. Jones advised me that they had the intent to retain Mr. Terrell Thomas to proceed with this matter.  And, in** |

> **fact, I should prepare his documents to transfer over to Mr. Thomas.**
>
> **I spoke to Mr. Thomas a couple of times Friday, Friday evening. He is supposed to be here this morning.** Clearly, I understand that if he is not here, I need to proceed on Mr. Jones' behalf. However, Judge, I think that in light of some of the circumstances on Friday, my advocacy has been diminished substantially by some of the conversations that took place on the voicemail messages and so forth - -

Court:      You have prepared this case for trial, right?

Counsel:   Yes, I have.

Court:      And you are prepared to go to trial?

Counsel:   **Mr. Jones is waving me off**. I understand, Judge.

Court:      It is ten o'clock in the morning on a Monday morning for this trial. This trial has been set for at least two or three months I believe. I think I set this trial date back in March at the very least. That is it was set for trial.

Counsel:   Yes, sir.

Court:      And we have a jury here waiting. It is ten o'clock in the morning. This Court has not been contacted by any other lawyer or attorney of any kind of appearance or any kind of request about entering this case.

Counsel:   I understand, Judge.

Court:      We are going to proceed to trial with this case. So, bring in the jury, please.

[T I 3-4 (Emphasis added)].

Jury selection then took place and was completed by 12:25 pm. (T I 5-114). When the Court adjourned for lunch the Prosecutor told the Court that no witnesses had appeared yet. (T I 115). The Officer-in-Charge, JoAnn Miller, had previously been excused from trial until Wednesday due to a death in her family. (T I 115-116; T II 113). After lunch, court went back on the record at 1:53 pm and the Prosecutor informed the Court that he still had no witnesses

present to call to the stand.  (T I 115-116).  In response, the Court refrained from swearing the jury in, gave the jury preliminary instructions, had the attorneys give their opening statements, and then adjourned for the day at 2:33 pm.[10]  (T I 115-137).

Mr. Jones wanted to fire Ms. Frederick and hire other counsel because she wanted him to take the plea offer and she had chosen not to employ his alibi defense as part of her trial strategy.  (GH I 11, 23).  Ms. Frederick had been vacillating on whether or not she should present the alibi defense.  (GH II 9-15).  Mr. Jones did not learn of Ms. Frederick's decision until the Thursday before trial.  (GH I 10-11, 23).  Ms. Frederick testified that given that Mr. Jones was unhappy with the decisions she was making she had no problem with making the motion for substitute counsel.  (GH I 14).  Mr. Jones' mother testified that when Mr. Jones' dissatisfaction with Ms. Frederick was brought up at trial, the other attorney was outside waiting for the family to retain him.  (GH I 36-37, 44-45).

An accused is entitled to retain the counsel of his choice.  US Const,          VI, XIV; Const 1963, art 1, secs 13, 20; Wilson v Mintzes, 761 F2d 275, 278-280 (CA 6, 1985); Powell v Alabama, 287 US 45, 53; 53 S Ct 55; 77 L Ed 158 (1932)("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure his own counsel of choice."); People v Sinistaj, 184 Mich App 191, 201  457 NW2d 36 (1990).  The right to counsel of choice is closely related to the right to present a defense:

> 'An accused's right to counsel of choice, like the right to choose self-representation, is part of an accused's right under the sixth amendment to choose the manner in which he will present his defense.  The right is personal to the accused and is protected independent of our concerns regarding the fairness of the proceeding.'  Wilson, supra at 279 n 5, citing Faretta v California, 422 US 806, 834  95 S Ct 2525  45 L Ed 2d 562 (1975).

---

[10]  The Court had the jury sworn at the beginning of the second day of trial prior to the start of testimony.  (T II 4).

The accused's right to present a defense is "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, . . . the right to present the defendant's version of facts as well as the prosecution's to the jury so it may decide where the truth lies." Washington v Texas, 388 US 14, 19  87 S Ct 1920  18 L Ed 2d 1019 (1967).[11]

In People v Charles O. Williams, 386 Mich 565, 568-571  194 NW2d 337 (1972), defense counsel made a motion to withdraw as counsel, on the day of trial, because the defendant was seeking another attorney.   The defendant complained that current counsel had not subpoenaed the two witnesses that he wanted called because counsel wanted him to take a plea offer.   Id.   The trial court denied the motion, ruled that no continuation would be granted (the other attorney was in the midst of a trial), and ruled that current defense counsel would continue. Id. at 568.  The Supreme Court found that the trial court had abused its discretion and remanded for new trial, explaining the factors that led to its ruling:

> In view of the facts that: 1) defendant was asserting a constitutional right - - the right to counsel; 2) he had a legitimate reason for asserting the right - - an irreconcilable Bona fide dispute with his attorney over whether to call his alibi witnesses; 3) he was not guilty of negligence [the disagreement had only occurred the day before trial[12]]; and 4) and the trial court was incorrect in stating that defendant had caused the trial to be adjourned several times - - we hold that the trial court abused its discretion in denying defendant's counsel's motion to withdraw and in preventing defendant from changing attorneys and granting a continuance in this case.  Id. at 578.

Application of the Williams factors to the present case demonstrates that the trial court here also abused its discretion.   1) Mr. Jones was asserting a constitutional right - - the right to counsel of choice.   2) Mr. Jones had a legitimate reason for asserting that right - - an irreconcilable bona fide dispute with his attorney over whether to present his alibi defense.  3)

---

[11]   The Sixth Amendment right to present a defense is applicable to the states through the due process clause of the Fourteen Amendment.  Washington v Texas, supra 388 US at 18-19.

Mr. Jones was not guilty of negligence in bringing the request.  Counsel Fredericks only told him on Thursday, May 16, 2002, a few days before the trial, that she was not going to run the alibi defense.  His family started the process of retaining another counsel, Mr. Terrell, the very next day, Friday.  4)  Mr. Jones had not caused any adjournments previously.  Mr. Jones had been arrested and arraigned November 18, 2001.  The Preliminary Examination was held on December 4, 2001.  On January 11, 2002, the Court set March 8, 2002 as the date any motions would be heard and set the trial date as May 20, 2002.  (Conference Transcript, January 11, 2002).  The Wade evidentiary hearing began on March 8, 2002, but could not be completed because, as later occurred at trial, the complaining witnesses, though served with subpoenas, did not appear.  (WH I 5).  The Court continued the evidentiary hearing on April 5, 2002.  There is no indication that the request to replace Ms. Frederick was a delaying tactic.

A continuance for the defendant would not have been an inconvenience to jurors or witnesses or the Prosecutor in this case.  Jury selection had not started and the Prosecutor had no witnesses present, civilian or police, on the first day of trial.  On day 1, excluding lunch, the trial session lasted about 3 hours.  (See T I 3, 115, 137).  On day 2, excluding lunch, the trial session lasted about two hours and 40 minutes.  (T II 4, 106, 116).  On day 2, the Prosecutor did not have enough witness present to fill the day.  (T II 105-106).  The Prosecutor was hampered because his Officer-in-Charge had had a death in the family and been excused until Wednesday (Day 3 of trial).  (T I 55, 115-116; T II 113).

Defendant recognizes the docket pressures that the trial court is under, but the court's docket cannot be the primary concern.  The Prosecutor's problems with getting in witnesses caused the Court to rail:

---

[12] Williams, supra at 576.

10

> I don't understand this okay. This case was set to go yesterday. You
> didn't have witnesses here then. . . And here we are now and you are
> telling me that you may not have anymore people to call and this is at
> the lunch break now.
>
> I have another case that is set for tomorrow. I set this case up
> for two days of trial and I try to maintain my trial schedule. And you
> know, a part of this is your office, your bosses upstairs, they're
> constantly complaining and criticizing the judges in this building,
> you know, for adjourning cases on trial date and so on.
>
> How can we do that [sic] if your office also is going to be a
> factor in doing that. I bet that Mr. Duggan or whatever his name is
> up there doesn't count that factor in when the prosecutors office
> doesn't do what they are supposed to do.
>
> Get the doctor here this afternoon. If not, I will go ahead and
> dismiss this case this afternoon one way or the other.
> [T II 106.]

In <u>Charles O. Williams</u>, <u>supra</u> the Prosecutor had offered as an excuse that because of the 1967

Detroit Riot the trial court's dockets were overburdened. The Supreme Court explained the

desire to expedite cannot countenance interfering with a defendant's right to fair trial. <u>Id.</u> at 576.

"[T]he desire of the trial courts to expedite court dockets is not sufficient reason to deny an

otherwise proper request for a continuance." <u>Id.</u> at 577.

The denial of the right to counsel of choice is structural error requiring automatic reversal

regardless of a showing of prejudice. <u>Flanagan</u> v <u>United States</u>, 465 US 259, 267-268  104 S Ct

1051  79 L Ed 2d 288 (1984); <u>Mintzes</u>, <u>supra</u> at 283-286; <u>People</u> v <u>Johnson</u>, 215 Mich App 658,

666-669 (1996). Even if it were not structural error, Mr. Jones was prejudiced in that his right to

present his defense was thwarted by the denial of counsel of choice. This Court must remand for

a new trial.

## SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT

**WHEREFORE**, for the foregoing reasons, Defendant-Appellant **JAMES JONES** asks that

this Honorable Court reverse his convictions and remand for a new trial.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

BY: _____

**JACQUELINE J MCCANN (P58774)**
Assistant Defender
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Dated:  May 21, 2004

RECEIVED
2004 MAY 21 P 4: 23
COURT OF APPEALS
DETROIT OFFICE
SANDRA SCHULTZ MENGEL
CHIEF CLERK

12

## STATE OF MICHIGAN
## IN THE COURT OF APPEALS

THE PEOPLE OF THE STATE OF MICHIGAN,
                    Plaintiff-Appellee,                          Court of Appeals
            vs                                                   No. 244062

**JAMES JONES.**
                    Defendant-Appellant.

Lower Court No. 01-13853

                                **PROOF OF SERVICE**

STATE OF MICHIGAN)
COUNTY OF WAYNE )ss

The undersigned deponent, being duly sworn, deposes and says that (s)he served a true copy of:
**BRIEF ON APPEAL.**

upon: Jacqueline J. McCann

the within named attorney(s) for defendant(s), by **placing in the U.S. Mail in a envelope fully paid with postage** on July 2, 2004  to the following address:

Jacqueline J. McCann
Attorney at Law
3300 Penobscot Building
645 Griswold
Detroit    MI  48226

                                        _Frank J. Bernacki_
                                        Frank J. Bernacki

and said pleading(s) was (were) filed in the Michigan Court of Appeals by Personal Service  to the following address:

Michigan Court of Appeals
3020 West Grand Boulevard, Suite 14-300
Detroit, MI 48202

Subscribed and sworn to before me
this 2nd day of July, 2004.

_Linda J. Woods_
Linda J. Woods
Notary Public, Wayne County, Michigan
My commission expires: 05/02/06.

# STATE OF MICHIGAN
# IN THE COURT OF APPEALS

*THE PEOPLE OF THE STATE OF MICHIGAN*,
*Plaintiff-Appellee*,

vs

**JAMES JONES.**
*Defendant-Appellant.*

Court of Appeals
No. 244062

Lower Court No. 01-13853

# BRIEF ON APPEAL
# ORAL ARGUMENT REQUESTED

KYM L. WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research
Training and Appeals

FRANK J. BERNACKI  P26352
Assistant Prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit, Michigan 48226
Phone: (313) 224-5785

Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Counterstatement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Counterstatement of Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Counterstatement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      A request for an adjournment is within the trial court's discretion. Here, the trial
        court denied defendant's 11th -hour request for a continuance for time to hire an
        attorney who would present a defense which was insufficiently based and which
        might lead to presentation of perjury. Defendant is not entitled to reversal as the trial
        court did not abuse its discretion in denying defendant's motion, and defendant was
        not prejudiced by this ruling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

## STATE CASES

People v Charles O. Williams,
    386 Mich. 565 (1972) ................................................................................ 5, 7

People v Coy, 258
    Mich. App. 1 (2003) ................................................................................... 8

People v Ginther,
    390 Mich. 436 (1973) ............................................................................... 3, 11

People v Graves,
    458 Mich. 476 (1998) ............................................................................... 7

People v Gross,
    118 Mich. App. 161 (1982) ...................................................................... 5

People v Lukity,
    460 Mich. 484 ........................................................................................... 6

People v Ramsey,
    89 Mich. App. 260 (1979) ........................................................................ 8

People v Sekoian,
    169 Mich. App. 609 (1988) ...................................................................... 8, 10

People v Sinistaj,
    184 Mich. App. 191 (1990) cited by ....................................................... 9, 10

Spalding v Spalding,
    355 Mich. 382 (1959) ............................................................................... 5

## COUNTERSTATEMENT OF JURISDICTION

The People accept defendant's statement of jurisdiction.

## COUNTERSTATEMENT OF QUESTIONS PRESENTED

I.

**A request for an adjournment is within the trial court's discretion. Here, the trial court denied defendant's 11th -hour request for a continuance for time to hire an attorney who would present a defense which was insufficiently based and which might lead to presentation of perjury. Is defendant entitled to reversal when the trial court did not abuse its discretion in denying defendant's motion, and defendant was not prejudiced by this ruling?**

The People answer: "No."

Defendant answers: "Yes."

2

## COUNTERSTATEMENT OF FACTS

The term *counsel* unless otherwise indicated refers to defendant's attorney at trial, Leesa Frederick.

Defendant was represented by retained *counsel* throughout the proceedings who began her representation before defendant went to the police precinct to be interviewed about his being robbed the day before to the murder in this case (6/27, 16).[1]   At none of his pretrial appearances[2] did defendant express any dissatisfaction with his representation or retain another attorney to represent him.  In fact, defendant signed the Final Conference form after the completion of his pretrial motion on January 11, 2002 indicating that he was ready for trial on May 20, 2002.[3]   Defendant motions were heard as scheduled on March 8, 2002 and April 5, 2002.  However, on the day that his trial was to begin, defendant sought to continue this matter so that he could retain another attorney who was expected to appear at trial but never did so (I, 3-4).  In fact, no attorney was ever retained, and no representation made that defendant was able to retain another attorney in a timely manner or that he would be able to do so in the foreseeable future.

From the start of her representation, **counsel** considered presenting an alibi defense. *Counsel* decided not present an alibi defense based upon the testimony of defendant's mother,

---

[1] All references within parentheses are to either volume or date and page of the record which includes pretrial hearings, the trial, and post-trial proceedings.

[2] These include the following dates from the courts computer registry of actions- November 18, 2001; December 4, 2001; January 11, 2002; March 8, 2002; April 5, 2002. See Appendix C.

[3] See Appendix A.

3

grandmother and girlfriend. At defendant's *Ginther*[4] hearing, **counsel** was questioned

concerning this decision. **Counsel** indicated that the possibility of the alibi defense was explored

thoroughly before trial (12/19, 7). The defense rested upon defendant's girlfriend Anessah

Broadnax as she was allegedly with defendant at time the victims were shot ( 12/19, 8). **Counsel**

interviewed Broadnax extensive on a number of occasions including a 7-hour discussion at the

time defendant was arrested (12/19, 8). However, **counsel** decided not to call Broadnax, as she

continuously stated that she could not testify to those facts under oath (12/19, 8-10 ). **Counsel**

feared that Broadnax would break down on the stand and go to pieces and appear to be lying due

to her demeanor, wavering, and refusal to testify (12/19, 9-10). **Counsel** also declined to put on

other potential witnesses who were family members because they could only provide an alibi for

the times surrounding the time that the shootings occurred and not for the critical time of th

shooting itself (12/19, 12). Further, defendant's mother would not testify (12/19, 12). **Counsel**

also did not wish to place defendant's grandmother on the stand because defendant's

grandmother was willing to lie in order to provide defendant with an alibi (12/19, 11-12).

Defendant's motion for new trial based upon his claim that he was deprived of

constitutionally effective assistance of counsel was denied in opinion and order issued January

15, 2004 by the trial court.[5]

All other facts will be set forth in the brief.

---

[4] *People v Ginther*, 390 Mich 436 (1973).

[5] See Appendix B.

4

# I.

**A request for an adjournment is within the trial court's discretion. Here, the trial court denied defendant's 11th -hour request for a continuance for time to hire an attorney who would present a defense which was insufficiently based and which might lead to presentation of perjury. Defendant is not entitled to reversal as the trial court did not abuse its discretion in denying defendant's motion, and defendant was not prejudiced by this ruling.**

**Standard of Review**

A trial court's denial of an adjournment or continuance is reviewed to determine whether the trial court abused its discretion.[6]

An abuse of discretion is a decision that is palpably and grossly violative of fact and logic so as to constitute the perversity of will.[7]

**Discussion**

**Defendant's burden of proof**

Defendant claims that he is entitled to a new trial because on the day the trial started, the trial court would not adjourn this case until defendant could retain a new attorney.

---

[6] *People v Charles O. Williams*, 386 Mich 565,572 (1972); *People v Gross*, 118 Mich App 161, 164-166 (1982).

[7]*Spalding v Spalding*, 355 Mich 382, 384-385 (1959).

5

Further, in applying this test, our Supreme Court has noted that its purpose is not technical and abstract but exists to serve the important need to encourage all trial participants to seek a fair and accurate trial the first time and to not require retrials for technical violations of the law when the defendant was properly convicted. Therefore, when defendant has failed to properly preserve an issue for appellate review, our Supreme Court requires that for defendant to merit reversal he must establish that 1) error occurred; 2) the error was obvious; 3) the error affected substantial rights of defendant which in the case of the admission of evidence amounts to finding that the error more probably than not was outcome-determinative.[8]

Further, in order to warrant reversal, defendant must show that the verdict of the jury cannot be relied upon as just which in this case would require defendant to show that he was in fact innocent.. Our Supreme Court stated more specifically:

> **The proper inquiry is not whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." (Emphasis added)** (Citations omitted).[9]

Here, defendant has failed to meet these requirements.

_____

[8] *People Lukity*, 460 Mich 484 91999).

[9] *Reed, supra,* at fn 21 at 400.

**Abuse of Discretion- Plain Error**

Defendant was represented by retained *counsel* throughout the proceedings who began her representation prior to the time that defendant went to the police precinct to be interviewed in relation to being robbed the day prior to the murder in this case (6/27, 16).   At none of his pretrial appearances[10] did defendant express any dissatisfaction with his representation or retain another attorney  to represent him.  In fact, he signed the Final Conference form after the completion of his pretrial motion on January 11, 2002 indicating that he was ready for trial on May 20, 2002.[11]   Defendant motions were heard on March 8, 2002 and April 5, 2002.  However, on the day that his trial was to begin, defendant suddenly moved to continue this matter so that he could retain another attorney who was expected to appear at trial but never did so (I, 3-4).  Another attorney was never retained, and no representation made that defendant was able to retain counsel in a timely manner or that he would be able to do so in the foreseeable future.  Therefore, at the 11th -hour, defendant was seeking an open-ended adjournment with no assurance that he would ever be able to retain another attorney.

In order to show plain error, defendant must show that the trial court abused its discretion[12] He must then establish that he was prejudiced by this decision as automatic reversal is not presumed.[13]

_____

[10] These include the following dates from the courts computer registry of actions- November 18, 2001; December 4, 2001; January 11, 2002; March 8, 2002; April 5, 2002.

[11] See Appendix A.

[12] *Charles O. Williams*, *supra.*

[13] *People Graves,*  458 Mich 476 (1998)

7

In *People v Coy*,[14] the court set forth the following factors to be weighed in determining whether defendant has shown the required good cause to grant a continuance:

> Good cause" factors include "whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments."

Here defendant while possibly asserting a constitutional right, the right to counsel, had been negligent and dilatory in asserting it by waiting until the trial was beginning to express dissatisfaction with ***counsel*** and seek a continuance with the hope of retaining a more agreeable attorney. Delays in bringing the motion are attributable to the party seeking the adjournment, and an abuse of discretion will not found when, as here, the denial is based upon defendant's negligence in raising the motion.[15]

In *People v Sekoian*, defendant had his appointed counsel removed and proceeded *in propria persona* until he retained counsel three days before the scheduled beginning of trial. In rejecting his claim of error that the trial court abused its discretion by not granting additional time so that he could perfect his duress defense, this court found that the lower court had not abused its discretion as the lack of time for defendant's counsel to prepare was attributable to defendant's negligence in retaining him three days before trial. In *People v Sekoian,* this court specifically stated the following:

> In this case, we find that defendant was asserting a constitutional right, the right to effective assistance of counsel. **However,**

---

[14] *People v Coy*, 258 Mich App 1 (2003).

[15] *People v Sekoian*, 169 Mich App 609 (1988); *People v Ramsey*, 89 Mich App 260,268-269 (1979).

**Abuse of Discretion- Plain Error**

Defendant was represented by retained *counsel* throughout the proceedings who began her representation before defendant went to the police precinct to be interviewed about being robbed the day before to the murder in this case (6/27, 16).   At none of his pretrial appearances[10] did defendant express any dissatisfaction with his representation or retain another attorney  to represent him.  In fact, he signed the Final Conference form after the completion of his pretrial motion on January 11, 2002 indicating that he was ready for trial on May 20, 2002.[11] Defendant motions were heard on March 8, 2002 and April 5, 2002.  However, on the day that his trial was to begin, defendant suddenly moved to continue this matter so that he could retain another attorney who was expected to appear at trial but never did so (I, 3-4).   Another attorney was never retained, and no representation made that defendant was able to retain counsel in a timely manner or that he would be able to do so in the foreseeable future.  Therefore, at the 11th - hour, defendant was seeking an open-ended adjournment with no assurance that he would ever be able to retain another attorney.

In order to show plain error, defendant must show that the trial court abused its discretion[12] He must then establish that he was prejudiced by this decision as automatic reversal is not presumed.[13]

_____

[10] These include the following dates from the courts computer registry of actions- November 18, 2001; December 4, 2001; January 11, 2002; March 8, 2002; April 5, 2002.

[11] See Appendix A.

[12] *Charles O. Williams*, *supra*.

[13] *People Graves,*  458 Mich 476 (1998)

In *People v Coy*,[14] the court set forth the following factors to be weighed in determining whether defendant has shown the required good cause to grant a continuance:

> Good cause" factors include "whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments."

Here while possibly asserting the right to counsel, defendant had been negligent and dilatory in asserting it by waiting until the trial was beginning to express dissatisfaction with *counsel* and seek a continuance with the hope of retaining a more agreeable attorney. Delays in bringing the motion are attributable to the party seeking the adjournment, and an abuse of discretion will not found when, as here, the denial is based upon defendant's negligence in raising the motion.[15]

In *People v Sekoian*, defendant had his appointed counsel removed and proceeded *in propria persona* until he retained counsel three days before the scheduled beginning of trial. In rejecting his claim of error that the trial court abused its discretion by not granting additional time so that he could perfect his duress defense, this court found that the lower court had not abused its discretion as the lack of time for defendant's counsel to prepare was attributable to defendant's negligence in retaining him three days before trial. In *People v Sekoian*, this court specifically stated the following:

> In this case, we find that defendant was asserting a constitutional right, the right to effective assistance of counsel. **However,**

---

[14] *People v Coy*, 258 Mich App 1 (2003).

[15] *People v Sekoian*, 169 Mich App 609 (1988); *People v Ramsey*, 89 Mich App 260,268-269 (1979).

**defendant himself was responsible for any lack of preparation since he rejected his court-appointed attorney and his retained attorney did not appear until three days before trial. The denial of a continuance is proper when the lack of counsel's proper preparation is partly a result of defendant's negligence.** *[People v]Bell,* 155 Mich.App. 413, 399 N.W.2d 542. Nor was defendant prejudiced by his inability to raise the duress defense at trial. Defendant was repeatedly warned that his duress defense was inadequate, he was allowed additional time to amend his notice and he was informed that he could seek an interlocutory appeal. **The trial court did not abuse its discretion in denying defendant's request.** [16] **(Emphasis added)**

In *People v Sinistaj,*[17] cited by defendant, this court rejected defendant's claim that the trial court abused its discretion when it refused to grant a continuance on the day that the trial was to commence and stated the  following:

> Here, defendant was asserting his constitutional right to counsel of his own choosing. The request for a continuance was based on the alleged breakdown of the attorney-client relationship, which stemmed, at least in part, from defense counsel's lack of success on the suppression motion. **However, the trial court considered the motion to be a dilatory tactic by defendant, because it was made on the day of trial. The only basis for his request apparent from the record was the trial court's denial of his suppression  motion, and the record indicates that defendant had other reasons for his unhappiness with his attorney well before the date set for trial**. ***. The court also noted that the case was the oldest on the docket.  **From a consideration of these factors as a whole, we cannot say that the trial court abused its discretion**. Moreover, defendant has not asserted any prejudice resulting from the trial court's denial of the requested continuance. Under these circumstances, defendant is not entitled to relief on this claim of error.  **(Emphasis added)** (Citations omitted).

---

[16] *Sekoian, supra*, at 614-615.

[17] *People v Sinistaj,* 184 Mich App 191, 201-202 (1990)

9

Here, defendant sought to adjourn so that he could possibly retain different counsel. His *counsel* was prepared to try this case. As with the courts in *People v Sinistaj* and *People v Sekoian,* the lower curt implicitly recognized that the motion was a 11th -hour attempt to delay the trial which if granted would postpone the trial indefinitely. The trial court recognized that defendant stated that he would be ready for trial at the Final Conference. His attorney was prepared and ready to proceed. The court did not abuse its discretion in denying the request for a continuance simply because defendant did not wish to proceed to trial on the appointed date and when defendant's negligence was the critical factor in not having a different attorney in place and prepared for a trial date on which defendant had indicated that he would be prepared to proceed.

The trial court, therefore, did not abuse its discretion.

**Prejudice**

Further, even if this court were to find that the trial court abused its discretion, defendant is not entitled to reversal of conviction.

In order to warrant reversal, defendant must establish that he was prejudiced by the denial of the continuance.[18] Here, defendant's allegation in support of his motion for continuance was that his *counsel* would not present his alibi defense. Defendant's *counsel* decided not present an alibi defense which would have been based upon the testimony of defendant's mother, grandmother and girlfriend. At defendant's *Ginther*[19] hearing, trial *counsel* was questioned

---

[18] *Charles O. Williams, supra*, at 578.

[19] *Ginther, supra.*.

concerning this decision.  **Counsel** indicated that the possibility of the alibi defense was explored

thoroughly before trial (12/19, 7).  The defense rested upon defendant's girlfriend Anessah

Broadnax as she was allegedly the only person with defendant at time the victims were shot

(12/19, 8). **Counsel** interviewed Broadnax extensively on a number of occasions including a 7-

hour discussion at the time defendant was arrested (12/19, 8).  However, **counsel** decided not to

use Broadnax, as she continuously stated that she could not testify to the alibi under oath (12/19,

8-10 ).  **Counsel** feared that  Broadnax would break down on the stand and go to pieces and

appear to be lying due to hear demeanor and wavering (12/19, 9-10).  **Counsel** also declined to

use other potential witnesses who were family members because they could only provide

tangential testimony about defendant's presence at some time during that day and not for the

critical time surrounding the shootings (12/19, 12).  Further, defendant's mother told **counsel**

that she would not testify (12/19, 12).  **Counsel** also considered calling defendant's grandmother

. However, **counsel** decided not to call her because defendant's grandmother was willing to lie

in order to provide defendant with an alibi (12/19, 11-12).

The record of this case reflects that the presentation of this alibi  defense  would have

been laced with perjury and quite  possibly would have resulted in the key witness  breaking

down and being unable to provide even the basic testimony.  This evidence has not been shown

to have been outcome-determinative.  Defendant has further failed to establish that denial of the

continuance so that this have perjured testimony presented  undermined  the validity of the

verdict or the integrity of the  proceedings.

Defendant has, therefore,  failed to meet his burden of establishing reversible error.

11

**RELIEF REQUESTED**

    *WHEREFORE*, the People pray that defendant's conviction be affirmed.

                       Respectfully Submitted,

                       KYM L. WORTHY
                       Prosecuting Attorney
                       County of Wayne

                       TIMOTHY A. BAUGHMAN
                       Chief of Research
                       Training and Appeals

                       FRANK J BERNACKI  P 26352
                       Assistant Prosecuting Attorney
                       11th Floor, 1441 St. Antoine
                       Detroit, Michigan  48226
                       Phone: (313) 224-5785

H:\FBernack\b.jones.james.6.17.wpd
Dated: June 11, 2004

FRANK J. BERNACKI/ lw

# STATE OF MICHIGAN

# IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

       Plaintiff-Appellee,

-vs-

**JAMES JONES**

       Defendant-Appellant.

_____/

**Court of Appeals No.** 244062

**Lower Court No.** 01-13853-01

**WAYNE COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee

_____

**JAMES JONES**
*In Pro Per*

_____

### DEFENDANT-APPELLANT'S PRO PER
### SUPPLEMENTAL BRIEF ON APPEAL
(submitted pursuant to Administrative Order 1981-7, Standard 11)

**JAMES JONES**
DOC Inmate # 362351
Thumb Correctional Facility
3225 John Conley Road
Lapeer, MI  48446

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ i

STATEMENT OF JURISDICTION ................................................................ iii

STATEMENT OF QUESTIONS PRESENTED ................................................ iv

STATEMENT OF FACTS ...............................................................................1

I.    DEFENDANT WAS DENIED DUE PROCESS OF LAW AS IS GUARANTEED BY
      THE FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES
      CONSTITUTION, AND ARTICLE 1, § 17 TO THE MICHIGAN CONSTITUTION
      OF 1963, WHEN THE IN-COURT IDENTIFICATION WAS THE RESULT OF AN
      IMPERMISSIBLE      SUGGESTIVE     PRE-TRIAL      PHOTOGRAPHIC
      IDENTIFICATION PROCEDURE CONDUCIVE TO IRREPARABLE MISTAKEN
      IDENTIFICATION .................................................................................2

II.   TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY FAILING TO
      DISQUALIFY HIMSELF SUA SPONTE FOR MAKING A REMARK ON THE
      RECORD THAT PREJUDICED HIM AS SITTING AS AN IMPARTIAL TRIER OF
      FACT ................................................................................................15

SUMMARY AND REQUEST FOR RELIEF ...................................................21

JJM*trimmed Pro Per Supplemental Brief.doc*19477; October 18, 2004
Jones, James

## INDEX OF AUTHORITIES

### U.S. CONSTITUTIONAL PROVISIONS

U.S. CONST. AMS. VI, XIV. CONST. 1963, ART. 1, § 20
U.S. CONST. AMS. XIV;  CONST. 1963, ART. 1, § 17............

### FEDERAL CASES

GREEN v LEGGINS,
614 F2d 219 (CA 9 1480)...........................................

MOORE v ILLINOIS,
434 US 220 229.................................................

NEIL v BIGGERS,
409 US 404.....................................................

UNITED STATES EX RE RAQAZZI v BRIERLY,
321 F.SUPP 440, 443 (1970)................................

US v SIMMONS,
390 US 377....................................................

US v WADE,
388 US 218....................................................

### STATE CASES

PEOPLE v ANDERSON,
389 MICH 155 (1973)..........................................

PEOPLE v AUDISON,
126 MichApp 829; 338 NW2D 182 (1986)........................

PEOPLE v BIGGE,
297 MICH 58, 64; 297 NW2D 70 (1941)........................

PEOPLE v BOURNIGHT,
106 MichApp 798, 807; 308 NW2D 703 (1981)..................

PEOPLE v CARTER,
415 MICH 558 (1982)..........................................

PEOPLE v COLE,
349 MICH 175, 199-200; 84 NW2D 711 (1957)..................

i

PEOPLE v COLLIER,
168 MichApp 687; 425 NW2D 118 (1988)...........................

PEOPLE v HAMPTON,
237 MichApp 143; 603 NW2D 270 (1999)...........................

PEOPLE v KACHAR,
400  MICH  80.................................................

PEOPLE v KOLOWICH,
264 MICH 668, 670; 250 NW2D 875 (1933)......................

PEOPLE v LAFAYETTE,
138  MICH  380  (1984)......................................

PEOPLE v LEE,
391  MICH  618.............................................

PEOPLE v LOBSINGER,
64 MichApp 284; 235 NW2D 761 (1975)........................

PEOPLE v LOWENSTEIN,
118 MichApp 475; 325 NW2D 462 (1982)......................

PEOPLE v PEQUES,
104 MichApp 45, 46; 304 NW2D 482 (1980)...................

PEOPLE v ROBY,
38 MichApp 387, 389; 196 NW2D 346 (1972)..................

PEOPLE v SOLOMON,
391  MICH  767  (1974)....................................

PEOPLE v STERLING,
154 MichApp 223; 397 NW2D 182 (1986)......................

PEOPLE v WILKENS,
139 MichApp 778; 362 NW2D 761 (1975).......................

## FEDERAL STATUES

WADE TO STOVALL;
LOWER COURTS BOBBIE AND BAY;
55  MINN. L. REV. 779,  795  (1971)..........................

## STATE STATUES

GCR 1963 912.2(2)..........................................

# STATEMENT OF JURISDICTION

Please see Defendant-Appellant's Brief on Appeal.

## STATEMENT OF QUESTIONS PRESENTED

I.    WAS DEFENDANT DENIED DUE PROCESS OF LAW AS IS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE 1, §17 TO THE MICHIGAN CONSTITUTION OF 1963, WHEN THE IN-COURT IDENTIFICATION WAS THE RESULT OF AN IMPERMISSIBLE SUGGESTIVE PRE-TRIAL PHOTOGRAPHIC IDENTIFICATION PROCEDURE CONDUCIVE TO IRREPARABLE MISTAKEN IDENTIFICATION?

            Trial Court answers, "No".

            Defendant-Appellant answers, "Yes".


II.   DID TRIAL JUDGE COMMIT REVERSIBLE ERROR BY FAILING TO DISQUALIFY HIMSELF SUA SPONTE FOR MAKING A REMARK ON THE RECORD THAT PREJUDICED HIM AS SITTING AS AN IMPARTIAL TRIER OF FACT?

            Trial Court made no answer.

            Defendant-Appellant answers, "Yes".

## **STATEMENT OF FACTS**

Please see Defendant-Appellant's Brief on Appeal.

ARGUMENT I

DEFENDANT WAS DENIED DUE PROCESS OF LAW AS IS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE 1, § 17 TO THE MICHIGAN CONSTITUTION OF 1963, WHEN THE IN-COURT IDENTIFICATION WAS THE RESULT OF AN IMPERMISSIBLE SUGGESTIVE PRE-TRIAL PHOTOGRAPHIC IDENTIFICATION PROCEDURE CONDUCIVE TO IRREPARABLE MISTAKEN IDENTIFICATION.

STANDARD OF REVIEW

A conviction based on eyewitness identification of the accused at trial following a pre-trial identification will be set aside on the grounds of improper pre-trial identification only if the pre-trial identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable mis-identification. NEIL v BIGGERS, 409 US 404.

DISCUSSION:

An improper photographic identification procedure may bias the case against the accused because the procedure may be so suggestive as to identify a picture in the witnesses mind with the Defendant, or because the psychological compulsion to stick by a previous identification; therefore it is important that there be

NOTE: FROM THIS POINT ON WHT MEANS WADE HEARING TRANSCRIPTS, PET MEANS PRELIMINARY EXAMINATION TRANSCRIPTS, TT MEANS TRIAL TRANSCRIPTS.

2

safeguards to protect the innocent from mis-identification, and the show-up procedures must minimize suggestiveness for viewers whenever possible.

In the instant case, the Detroit Police responded to a shooting on the West side of Detroit. After talking to several witnesses at the scene, they were given a name of "Fresh" who was allegedly one of the person's involved in this crime.

At no time did any of the witnesses give a detailed description of "Fresh." Somehow, the Detroit Police was able to obtain a picture of Defendant James Jones. They took this picture, by itself, and went back to the scene of the shooting, and asked the witnesses was this the person known as "Fresh."

Witnesses Edward Martin, Joseph McCirmon, and Phillip Mason agreed that this was indeed the person they knew as "Fresh."

During a Wade Hearing to suppress the identification, Detroit Homicide Detective, Joann Miller testified that she was one of the officers that showed the witnesses the Defendant's picture to see if this was "Fresh." (WHT pt.1, pg. 14, lines 3-6).

During her testimony it was brought out that the Defendant's attorney was at the Detroit Police Headquarters, therefore, she was able to be at the photographic show-up.

3

In PEOPLE v KACHAR, 400 MICH 80, the Court held; "Counsel must be present at a photographic identification of an accused who is in custody, or where the defendant, although not in custody, is the focus of the investigation, when the purpose of the defendant is to build a case against the defendant by eliciting identification evidence, not to extinguish a case against an innocent bystander. A conviction is under attack where the identification procedure followed is so unnecessary suggestive and conducive to irreparable mistaken identification that the defendant identification denied him due process of law."

Identification by photograph generally should not be used where the accused is in custody.

In the instant case, the Defendant was at the Second Precinct, so he was able to appear in a corporeal line-up. Identification by photograph may not be used in pre-custody situations where the accused can be readily produced for a corporeal line-up.

In PEOPLE v LEE, 391 MICH 618, the Court held; "The rule subject to certain exceptions, identification by photograph should not be used where the accused is in custody and that there is a legitimate reason to use photographs for identification of an in custody accused, he has the right to counsel as much as he would for corporeal identification procedures, attaches with custody; that rule should be extended to the pre-custody, pre-questioning,

4

mere suspicion phases as it is not feasible to require appointment of counsel in cases of pre-custody photographic show-ups where there is no detention of the defendant. The fairness of the identification procedure must be evaluated in the light of the totality of the circumstances and the test is the degree of suggestion inherent in the manner in which the suspects photograph is presented to the witnesses for identification."

In the instant case, there was only one photograph shown, and that was of the Defendant. It is impossible to say that this was not suggestive. In any photo array, there is to be more than one photo, and the photo's must bear some resemblance so as not to make the suspect stand out.

Improper suggestion commonly comes about because of three things; (1) first the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person; (2) second, if the witness is shown only one person or a group in which the one person is singled out in some way he is tempted to presume that he is the right person; (3) third, as the second factor, just discussed above, eyewitness identification has inherent weakness from the standpoint of the witness problems of sensation, retention, etc...and the similarity in people. PEOPLE v ANDERSON, 389 MICH 155 (1973); US v WADE, 388 US 218; US v SIMMONS, 390 US 377.

The identification at the preliminary examination was highly

suggestive as the Defendant was presented as the accused at the defense counsel's table. An in court identification may be as suggestive as any one on one confrontation and the dangers of misidentification are just as great. See PEOPLE v SOLOMON, 391 MICH 767 (1974), adopting the dissenting opinion in 47 MichApp 208, 216-222 (1973);

> "If there is any identification procedure which is suggestive, it is that which is used daily in open court, with the defendant sitting at the table next to his lawyer and the lawyer being clearly recognizable from the participation in the law suit, and only the most imperceptible witness would be unable to identify the person whom the police and prosecution have accused."

Edward Martin testified that he knew the Defendant through the deceased (TT Vol. 2, pg. 6, line 12). He also testified that he probably smoked a blunt with him (TT Vol. 2, pg. 6, line 18). Yet during the Wade Hearing he positively stated that he smoked a blunt with the Defendant two days before the shootings (TT Vol.II, pg. 26, lines 1-12).

Mr. Martin is obviously trying to show that he knew the Defendant well. His testimony on that point changed throughout the proceedings. At the preliminary examination, he testified that he may have smoked a blunt with the Defendant, but he did not hang out with him, they wasn't tight like that (PET pg. 18, lines 13-16). At the Wade Hearing he testified that he may have smoked a blunt with the Defendant sometime in the pass (WHT pg. 6, lines 1-3). Yet at trial he testified that they indeed in fact smoked a

6

blunt together. This would be probable but for the fact why would you smoke anything with anybody that you weren't real familiar with?

It is obvious that Mr. Martin was upset that his friends had been shot and killed. There was some question as to the fact that perhaps him and his friends were the ones who had robbed the Defendant the day before. It would seem very likely if that was the case they would say that this person had come back for revenge revenge. But the problem with that is Mr. Martin testified that the car was doing 60 miles an hour, someone was shooting an AK47 assault rifle from the back seat, he was on the ground trying to get away (TT VOL III pg. 15, line 1). The question becomes how can you see anything running away to keep from getting shot?

It is obvious that the Homicide Detective, Joann Miller induced the witnesses to say that the picture that she illegally showed them was in fact "Fresh."

During the trial, Detective Miller admitted that she tricked the Defendant to the police station to see who he was. (TT VOL 3, pg. 17, lines 6-15). She also testified that she saw nothing wrong with showing just one photo of a suspect when she has been trained to know that this would be suggestive. Detective Miller testified that there was nothing prejudicial to showing just one photo (TT VOL. III, pg. 18, lines 11-14).

7

This in itself is a blatant misuse of the 14th Amendment of the United States Constitution, violation of the Defendant's due process rights.

During the corporeal line-up, the Defendant was represented by Attorney Dennis Shrewsberry. At the time of the line-up, Atty. Shrewsberry objected to the appearance of suspect number three who happened to be the Defendant. He based his objection on the fact that the Defendant was clean shaven had on a white t-shirt, while the other people had on coats; and that his hair was substantially different from the others. (WHT pg. 46, lines 16-24). Atty. Shrewsberry also testified that the third witness, who was Joseph McCrimon came out of the view room and said that number three was the person that the police showed them a picture of, and that a female officer was present in the group (WHT pg. 48, lines 17-23; pg. 50, lines 4-12).

On cross examination, Atty. Shrewsberry was asked did he think that the lineup was suggestive. He pointed out his objection was that the Defendant stood out in several aspects, and that this was noted on his form (WHT pg. 50, lines 1-24).

Attorney Shresberry also testified that he was surprised to hear witness Joseph McCrimon comment about seeing a photo of the Defendant before the line-up because that suggested he had seen something prior to the line-up (WHT pg. 55, lines 17-25).

8

It is clear what surprised this attorney. He knew right off that if the police had indeed showed the Defendant's picture before the line-up, then any identification of anybody would be tainted. There is no justifiable reason for the police to show one photo and one photo only of any suspect to any potential witnesses, and definitely not right before a live show-up.

To allow the conviction to stand under these circumstances would definitely be a manifest injustice.

The problem with any suggestion in a pretrial identification procedure is that it allows the witness "unconsciously" to reformulate the suspects image. This is where the process of mis-identification begins. In PEOPLE v ANDERSON, 389 MICH 155 (1973), at 205 the Supreme Court attempted to explain why the very process of sight recognition presents dangers that people who are merely similar may be perceived as one and the same. In the instant case, the witness said that he knew the Defendant from the neighborhood, but could not provide a description of the Defendant. Any certainty that the witness may have felt in his identification of Defendant James Jones does not guarantee that he was not influenced by the police showing him a picture of the Defendant. Here the record is clear , as set forth in SIMMONS, supra;

> "The identification procedure, although seemingly free from influence, can still impact subtle suggestion and effect the witness judgement and subsequent selection of a participant as the criminal. The witness may feel that the police would not ask them to view a line-up unless they felt that they had

the culprit. He may also feel an
obligation to reward the police for
their effort by selecting a participant
as the guilty party. The question in the
witnesses mind may become which one of
the participants is he? Rather than is
the criminal in the line-up.

NOTE: Pretrial identification
procedures--WADE to STOVALL: LOWER
COURTS BOBBIE AND BAY, 55
MINN. L. REV. 779, 795 (1971).

(FOOTNOTE OMITTED) (EMPHASIS ADDED)

The record is clear in the instant case that the prosecutor
could not sustain his burden of proving that the witnesses had an
independent basis for identification. Admission of the
identification was crucial to the prosecutions case, and
consequently any error concerning it cannot be viewed as harmless,
and constituted a manifest injustice against the Defendant. US
CONST. AMS. V, VI, XVI; MICH. CONST. 1963 ARTICLE 1, § 17. In
SIMMONS v UNITED STATES, 390 US 377 (1968), the court concluded
that convictions based on in court identification following
suggestive pretrial identification procedure "was so impermissibly
suggestive as to give rise to a very substantial likelihood of
irreparable misidentification."

The claim of a suggestive pretrial identification procedure
is considered in light of the totality of the
circumstances. Police procedures frequently mislead eyewitnesses
into misidentification of the defendant. PEOPLE V ANDERSON, supra.
"Contrary to legal folklore, strong emotion at the time of the
observation or subsequent report tends to increase the probability

10

of error." Id at 175. The repetition of identification procedures can in fact act to reinforce a witnesses mis-identification.

> "Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person who he actually saw, reducing the trustworthiness of subsequent lineup or courtroom identification. SIMMONS, supra at 383-384.
> (footnote omitted) (emphasis added).

In addition, there is the psychological compulsion to stick by a previous identification. PEOPLE v LEE, 391 MICH 618 (1974). Even the slightly suggestive influence, coupled with natural limitations of human perception and recall, can lead to irreparable mis-identification. [Suggestion "devastates memory and plays havoc with our best intended recollections. PEOPLE v ANDERSON, supra, at 215. It is an unconscious process which we are peculiary susceptible to and whose influence we are unable to detect, id at 216.]

The change of mind of eyewitness identification are well known: the annals of criminal law are rife with instances of mistaken identification. So recognized the United States Supreme Court in UNITED STATES v WADE, 388 US 218, 87 S.Ct 1926; 18 L.Ed 2d 1149 (1987), Wade acknowledged that the influence of improper suggestion upon identifying witness probably accounts for more miscarriages of justice than any other single factor...18 L.Ed.2d at 1158. The great danger of an improper procedure is that an initial misidentification may unduly influence and subsequent identification. PEOPLE v CARTER, 415 MICH 558 (1982).

11

In the instant case, eyewitness Edward Martin, Joseph McCrimon, and Phillip Mason stated that they knew the Defendant from the neighborhood. Edward Martin even testified that he may have smoked a blunt with the Defendant two days before the shootings, If that is indeed the case, then why didn't they give police a detailed description of the Defendant? The answer is obvious; they had no idea who "Fresh" was until the police showed them one photo and asked them, or more than likely suggested to them that this guy in the picture is "Fresh."

Here you have so-called reliable witnesses who supposedly can readily identify the Defendant, then why show them a photograph? Why not just take them to the lineup and see if they could pick the Defendant out without any help from the police. Showing one photo was extremely prejudicial to the Defendant, and very suggestive in nature. PEOPLE v KACHAR, supra at 80; CARTER, supra at 558.

IN PEOPLE v CARTER, supra, the defendant argued that Detective Rand's statement to Potter revealing that he had focused on a particular suspect and that she had selected the proper photograph rendered the procedure impermissibly suggestive and tainted her identification at trial. It is true that comments such as those allegedly made by Detective Rand may lead to error in a photographic identification procedure sic the instant case

> "The chance of misidentification is also
> heightened if the police indicate to the
> witness that they have other evidence
> that one of the persons picture
> committed the crime. (SIMMONS v UNITED
> STATES, supra, 383-388).

12

An in court identification may still be made if, but only if the prosecution is first able to establish by clear and convincing evidence that the in court identification [is based] upon observation of the suspect other than the lineup identification, WADE, supra at 240. In UNITED STATES EX re RAOAZZI v BRIERLY 321 F.Supp 440, 443 (1970), the court observed that the preliminary examination is "fraught" with suggestibility.

> The preliminary hearing is particularly
> fraught with dangers of suggestibility,
> intentional, or otherwise it is in this
> setting that an accused has frequently
> been presented to the victim or witness
> as one whom the state suspect's as being
> guilty of an offense, and guilty of the
> very offense to which the victim has
> been subjected or which the witness
> observed.

See also MOORE v ILLINOIS, 434 US 220, 229, 98 S.Ct 458; 54 L.Ed.2d 424 (1977); GREEN v LEGGINS, 614 F. 2d 219 (CA 9 1480); PEOPLE v LAFAYETTE, 138 MICH 380 (1984), (reversed since a single photograph and a one-on-one confrontation with the Defendant was suggestive and there was no independent basis for the in-court identification). Where the pretrial identification was unduly suggestive, the witness will not be permitted to make an in-court identification unless the prosecution can show that there is an independent source for the identification. KACHAR, supra.

## RELIEF REQUESTED

WHEREFORE, for all the foregoing reasons, Defendant James Jones requests this Honorable Court to reverse his convictions and enter a judgement of aquittal, or minimally remand back to the lower court for a new trial.

## ARGUMENT II

TRIAL JUDGE COMMITTED REVERSIBLE ERROR
BY FAILING TO DISQUALIFY HIMSELF SUA
SPONTE FOR MAKING A REMARK ON THE RECORD
THAT PREJUDICED HIM AS SITTING AS AN
IMPARTIAL TRIER OF FACT.

## STANDARD OF REVIEW

Although failure to make a timely objection, as a general
rule, precludes Appellate review, an Appellate Court can
react, even in the absence of a timely objection, to error
that resulted in a denial of a fair trial. PEOPLE v COLLIER,
168 MichApp 687; 425 NW2d 118 (1988).

## DISCUSSION:

A showing of actual bias is not necessary where the
Judge:

1. Has a pecuniary interest in the
   outcome of the case;
2. Has been the target of personal abuse
   or criticism from a party before him
   or her;
3. Is enmeshed in other matters
   involving the parties; or
4. Might have prejudged the case because
   of prior participation as an accuser,
   investigator, factfinder, or initial
   decision maker.

Where the trial judge acknowledged some degree of animus
towards the defendant, trial judge should have disqualified
himself. PEOPLE v LOBSINGER, 64 MichApp 284; 235 NW2d 761
(1975).                                    15

In Collier, supra, at 697, the defendant argued that certain comments made by the trial judge to the jury foreman, denied him his right to trial by an impartial jury. Defendant reasons that the trial judges remarks demonstrated a partiality toward the jury foreman, placing the latter in a favored position to unduly influence the jury. US CONST. AMS. VI; MICH. CONST. 1963, ART. 1, § 20. PEOPLE v BIGGE, 297 MICH 58, 64; 297 NW2D 70 (1941). Defendant also argues citing PEOPLE v COLE, 349N MICH 175, 199, 200; 84 NW2D 711 (1957), that the trial courts remarks denied him a fair trial by improperly piercing the veil of judicial impropriety. See also; PEOPLE v STERLING, 154 MichApp 223; 397 NW2D 182 (1986); PEOPLE v AUDISON, 126 MichApp 829; 338 NW2D 235 (1983); PEOPLE v HAMPTON, 237 MichApp 143; 603 NW2D 270 (1999).

In the instant case, the Defendant was in court to be arraigned on the information and the Honorable Thomas Jackson made the following remark;

"This is really disgusting here. I put this person on probation, what, three, four months ago back in April. I put him on probation for two years for a loaded weapons charge and he goes and kills people." (Arraingment transcripts pg. 4, lines 16-19).

16

Defendant's attorney failed to object, but she did state to the Judge ; "Well, your Honor, he is still presumed innocent", at which point Judge Jackson stated; "I don't need that argument, Ms. Frederick. You dont need to respond to that, okay. All right." (ART pg. 4, lines 20-23).

As a general rule, this court will not review allegations of error based on the conduct of the trial court in situations where no objection was made at the trial court level. PEOPLE v BOURNIGHT, 106 MichApp 798, 807; 308 NW2D 703 (1981), rev'd on other grnds; 419 MICH 458, 490 (1984). However, since appellate courts cannot condone manifest injustice, this court can react, even in the absence of timely objection, to error which resulted in a denial of a fair trial. PEOPLE v ROBY, 38 MichApp 387, 389; 196 NW2D 346 (1972). Such review without benefit of an objection at the trial court level has been characterized as "particularly appropriate" in cases such as this, when any objection had to be made to the trial judge himself concerning his own conduct. Id.

Defendant James Jones contends that the Honorable Thomas Jackson should have disqualified himself on his own motion since it was obvious that he was displeased to see the Defendant back in his court charged with murder. Judge Jackson was biased because he denied the Defendant's motion to suppress the identification where there was more than enough substantial evidence to grant the motion (See argument 1).

17

Throughout the remainder of the trial, the Honorable Thomas Jackson denied the majority of Defendant's objections, refused to allow the Defendant to remove his counsel in favor of counsel his family had retained to represent the Defendant, etc. The question becomes, "why?" It is obvious from Judge Jackson's statement that he would "punish" Defendant for violating his (Judge Jackson's) probation.

GCR 1963, 912.2(2) states that a judge is to be disqualified when he or she is personally biased or prejudiced for or against a party or attorney. Defendant contends that certain rulings and actions by Judge Jackson during the trial disclosed an actual prejudice on his part against the Defendant. If actual bias or prejudice is shown to have existed, a conviction will be reversed on the grounds that the trial judge should have disqualified himself from hearing the case. PEOPLE v PEQUES, 104 MichApp 45. 46; 304 NW2D 482 (1980).

Defendant contends actual bias was shown by the fact that Judge Jackson stated that Defendant was "killing people."

In PEOPLE v LOBSINGER, 64 MichApp 284, the defendant moved to have Judge Ravitz disqualified from being trier of fact in his case (see footnoted pages 286-289, 1-5). This was due to the fact that the trial judge called the defendant a

"Nazi." This is similar in nature in what the trial judge said in the instant case.

> "Although presenting a question of "personal bias" is analogous in that it requires a determination as to whether personal animosity existed between the trial judge and the defendant, or whether it was purely a problem of conflicting ideologies, as can be seen by the footnoted portions of the record in denying the motion for disqualification and by testifying before the reviewing Recorder's Court, Judge Ravitz "acknowledged" that some 'personal degree of animus' existed between him and defendant which was real." Id. at 290.

Furthermore, although affirming Judge Ravitz denial of defendant's motion, the reviewing judge characterized Judge Ravitz testimony as admitting dislike for the defendant. Apparently then, a degree of personal bias or prejudice did in fact exist.

In the instant case it is obvious from the statement that Judge Jackson was biased against the Defendant. In the fairness of justice, he should have removed himself from sitting as the trier of fact. Although it would up to the jury to decide Defendant's guilt, Judge Jackson could use his position to unduly sway the evidence in favor of the prosecution by denying anything positive that the Defendant had going for him. Unconsciously, Judge Jackson acknowledged some degree of personal animus towards the Defendant James Jones, and once that had been recognized, Judge jackson should

19

have disqualified himself from the case. PEOPLE v KOLOWICH, 264 MICH 668, 670; 250 NW2D 875 (1933). SEE also, PEOPLE v LOWENSTEIN, 118 MichApp 475; 325 NW2D 462 (1982); PEOPLE v WILKENS, 139 MichApp 778; 362 NW2D 761 (1975).


## RELIEF REQUESTED


WHEREFORE, for all the forgoing reasons, Defendant James Jones requests that this Honorable Court reverse his convictions, and enter a judgement of aquittal, or minimally remand back to the lower court for a new trial before a different Judge.

## SUMMARY AND REQUEST FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Defendant-Appellant **JAMES JONES** asks that

this Honorable Court reverse his convictions and remand for a new trial.

Respectfully submitted,

BY: _____
       JACQUELINE J MCCANN (P58774)
       Assistant Defender **SIGNING FOR:**
       **JAMES JONES, #362351 IN <u>PRO</u> <u>PER</u>**
       Thumb Correctional Facility
       3225 John Conley Drive
       Lapeer, MI 4844

Dated: October 18, 2004

21

# STATE OF MICHIGAN
# IN THE COURT OF APPEALS

**THE PEOPLE OF THE STATE OF MICHIGAN,**
*Plaintiff-Appellee,*

vs

Court of Appeals
No.   244062

**JAMES JONES.**
*Defendant-Appellant.*

Lower Court No.  01-13853

## APPELLEE'S SUPPLEMENTAL BRIEF ON APPEAL
(submitted pursuant to Administrative Order 1981-7, Standard 11)

KYM L. WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research
Training and Appeals

FRANK J. BERNACKI   P-26352
Assistant Prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit, Michigan 48226
Phone: (313) 224-5785

Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Counterstatement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Counterstatement of Questions Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Counterstatement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      An identification will not be suppressed unless it resulted from an unduly suggestive
        pretrial procedure. In this case, the police showed a picture of defendant to a witness
        who had named defendant as the murder.   In the totality of the circumstances, the
        trial court did not err in failing to  suppress this identification. . . . . . . . . . . . . . . . . . . . . 4

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     A trial court's  actions which deny defendant a fair trial support a claim that the trial
        court should have disqualified himself.  Here,  the trial court insured that defendant's
        guilt was judged  based upon the evidence presented and the appropriate law.  The
        trial court did not err in failing to *sua sponte* disqualifying himself . . . . . . . . . . . . . . . . 8

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

Neil v. Biggers,
409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972) ........................................ 6

US v Anderson,
490 F.2d 785 (DC Cir, 1974) ........................................ 6

United States v Wade,
388 U.S. 218 (1967) ........................................ 4

## STATE CASES

People v Carines,
460 Mich. 750 (1999) ........................................ 8

People v Kachar,
400 Mich. 78 (1977) ........................................ 7

People v. Lee,
391 Mich. 618 (1974) ........................................ 5

People v Mixon,
170 Mich. App. 508 (1988) ........................................ 8, 9

People v Petrella,
124 Mich. App. 745 (1983) ........................................ 5

People v Young,
206 Mich. App. 144 (1994) ........................................ 4

## COURT RULE

MCR 2.003(C)(1) ........................................ 8

# COUNTERSTATEMENT OF JURISDICTION

The People accept defendant's statement of jurisdiction.

## COUNTERSTATEMENT OF QUESTIONS PRESENTED

I.     **An identification will not be suppressed unless it resulted from an unduly suggestive pretrial procedure. In this case, the police showed a picture of defendant to a witness who had named defendant as the murder.  In the totality of the circumstances, did trial court err in not suppressing this identification?**

The People answer: "No"

Defendant answers: "Yes."

The trial court answered "No."

II.    **A trial court's  actions which deny defendant a fair trial support a claim that the trial court should have disqualified himself.  Here,  the trial court insured that defendant's guilt was judged  based upon the evidence presented and the appropriate law.  Did the trial court err in not *sua sponte* disqualifying himself?**

The People answer: "No."

Defendant answers: "Yes."

The trial court was not asked to answer.

2

## COUNTERSTATEMENT OF FACTS

The People adopt the Counterstatement of Facts from their Brief on Appeal.

# I.

**An identification will not be suppressed unless it resulted from an unduly suggestive pretrial procedure. In this case, the police showed a picture of defendant to a witness who had named defendant as the murder.  In the totality of the circumstances, the trial court did not err in failing to  suppress this identification.**

**Standard of Review**

A trial court's finding of facts is reviewed to determine whether the court clearly  error so that  this court has a  firm  conviction that a mistake has been made.

A trial court's ruling on a constitutional challenge to the admissibility of an in-court identification is reviewed *de novo*.[1]

**Discussion**

On April 5, 2002, prior to trial a *Wade*[2] hearing was held concerning  the in-court identification of one of the witnesses involved in this case.  At that hearing,  Edward Martin testified that prior to the murder,  he had known defendant for more than a year  from seeing him in his  neighborhood(4/05, 5-6).  Martin also stated that he knew defendant by his nickname *Fresh* (4/05, 6).  Martin also stated that on November 15, 2001 he saw defendant driving the car from which the deceased was shot.  Martin also stated that the shots were fired from the backseat of defendant's car (4/05, 6, 14).  After the shooting,  Detroit Police Department Officer JoAnn Miller showed Martin a photograph of defendant which Martin identified as *Fresh*(4/05, 6, 14 ).[3]

---

[1] *People v Young*, 206 Mich App 144 (1994).

[2] *United States v Wade*, 388 US 218 (1967).

[3] From the record it appears that testimony was taken on a previous day as well. The People do not have this transcript. However, the relevant facts, as presented by defendant, concerning the use of the photograph and the identification of defendant  established on that date were corroborated by the testimony on April 5, 2002.

4

Martin stated that he attended a live lineup on November 18, 2000, at which time he identified defendant (4/05, 7). Martin emphasized that he identified defendant based upon his actions at the time of the murder and not upon the suggestion of the police (4/05, 14).

The court found that Martin had given the name *Fresh* to police immediately and that the police had through their records produced the picture used based upon the name provided by Martin. The court found that the single photograph of defendant was shown for the purpose of determining whether defendant was the person whom Martin knew as *Fresh*. The court also found that Martin confirmed that defendant was that person. The court next found that the police then proceeded to arrest defendant and place him in a corporeal lineup where Martin again identified him (4/05, 24-25).

The facts upon which the court based it decision were established in the record and are not disputed. Therefore, the court's factual findings do not reflect that a mistake was made by the court.

Based upon these facts, the court ruled that the use of the individual photograph was for the purpose of identifying the person whom the witness knew by name (4/05, 26-27).

The fairness of an identification procedure is evaluated in the light of the totality of the circumstances.[4] The test is not whether it is suggestive but rather whether the totality of the circumstances shows it to be reliable.[5] The police are not precluded from using information and photographs to determine who committed a crime; they are only precluded from being unduly suggestive to the victims and witnesses that they interview in their investigation.

---

[4] *People v. Lee*, 391 Mich. 618 (1974)

[5] *People v Petrella*, 124 Mich App 745, 756 (1983).

5

In *People v Petrella*,[6] defendant was arrested within a few hours of the crime and taken

to the victim. The victim knew defendant prior to the commission of the crime.  In upholding the

admissibility of the victim's identification, the court stated the following:

> The present situation presents a third variation of an
> on-the-scene identification, because the complainant
> already knew who her assailant was before the
> "identification". She was not taken to see defendant in
> hopes of stirring a recollection upon seeing him but
> rather merely to point out to the police the man she had
> already designated to them as her assailant. As such, an
> identification of the type described in *People v. Jackson*,
> 391 Mich. 323, 217 N.W.2d 22 (1974), did not occur, and
> the inherent suggestiveness normally present in an
> on-the-scene identification is therefore absent.[7]

Likewise, in *US v Anderson*,[8] the victim knew defendant from living in the same

building with him.   After his commission of the robbery, the police arrested defendant and

brought him to the victim who identified him.  In uphold the validity of this procedure, the court

stated:

> We think the appellant's attack on the identification must fail. The
> vice of a one-man confrontation is of course that it may be
> suggestive and increase the likelihood of misidentification. *Neil v.
> Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In
> this case, however, Mrs. Rosebrough knew Anderson well so there
> was no danger of mistaken identification. The obvious purpose of
> the confrontation was to make certain that the police had arrested
> the man named to them by Mrs. Rosebrough.[9]

---

[6] *Id.*

[7] *Id* at 755.

[8] *US v Anderson*, 490 F2d 785 (DC Cir, 1974).

[9] *Id.*, at 787.

Consistent with this authority, the trial court found that as the witness knew defendant prior to the crime and that the photograph was shown to Martin to determine if defendant were in fact the person that the witness knew as *Fresh.*

Further, the court, mindful that this court may not agree with its ruling, went on to find that an independent basis for the admissibility of Martin's identification was established based upon the analysis of the required factors[10]. The victim knew defendant had an adequate time to see him never identified anyone else, or ever failed to identify defendant ((4/05, 26-27).

The court properly noted that defendant's argument relating to the identification went to evidentiary weight and not to the constitutional admissibility of Matin's identification (4/05, 27-28).

In the totality of the circumstances, the court's decision reflected the correct factual evaluation and legal analysis of the evidence presented and the arguments made. By so ruling the court did not err.

Defendant's claim is meritless.

---

[10] *People v Kachar*, 400 Mich 78 (1977).

7

## II.

**A trial court's actions which deny defendant a fair trial support a claim that the trial court should have disqualified himself. Here, the trial court insured that defendant's guilt was judged based upon the evidence presented and the appropriate law. The trial court did not err in failing to *sua sponte* disqualifying himself.**

## Standard of Review

The standard of review for unpreserved error is whether the claim involves plain error which affected defendant's substantial right to a fair trial and whether defendant has further affirmatively shown that his conviction amounted to a miscarriage of justice or resulted in a verdict which was undermined by the commission of this error.[11]

## Discussion

Defendant now claims that the trial court should have *sua sponte* disqualified himself. However, as defendant did not move prior to trial, at trial, or at his post-conviction hearing to disqualify the trial court, he has failed to preserve this issue.[12]

Further, his claim is substantively meritless. As defendant did not seek to disqualify the trial court, the claim now raised was not preserved and was thereby forfeited.[13] Reversal is therefore required only if the trial court's ruling was plain error which amounted to a miscarriage of justice. In order to warrant reversal, defendant must establish that 1) error occurred, 2) the

---

[11] *People* v *Carines,* 460 Mich 750 (1999).

[12] MCR 2.003(C)(1); *People v Mixon*, 170 Mich App 508, 514 (1988).

[13] *Carines, supra.*

8

error was obvious and 3) the plain error affected substantial rights.   Defendant has not sustained

his burden.

In *People v Mixon*, this court stated the following in rejecting defendant's claim that   he

was entitled to a new  trial:

> Defendant Mixon contends that his convictions should be reversed because of bias of the trial judge. Certain portions of the trial record are quoted in his brief to support his claim of bias. We  have reviewed these colloquies, and it is apparent that the judge dealt sharply with defense attorney's arguments when the defense attorney continued to argue after the judge had ruled. However, the judge's statements do not reflect a bias against the defendant, but rather the judge's distaste for counsel's contentiousness and for the circumstances of the case. Further, Mixon's claim of bias cannot prevail.
>
> First, because he failed to move for disqualification of the trial judge pursuant to MCR 2.003(C)(1), the issue  is not preserved for appellate consideration. * * * Second, even if the issue had been preserved, Mixon's principal claim of bias arises from comments made by the trial judge during hearings not held in the presence of the jury. Therefore, the comments could not operate to deny defendant a fair trial. Third, * * * "The appropriate test to determine whether the trial court's comments determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments 'were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial.' "
>
> The record in this case discloses that the jury was not influenced by any comment or conduct of the trial court, but rather by the overwhelming evidence of Mixon's guilt.

Here, defendant has not even argued how the trial court showed his bias or how this bias

affected the trial through  rulings or  instructions.  Specifically, absent the previous meritless

claim, defendant has not alleged that improper evidence was admitted, that the evidence was

insufficient to support his guilt, that the People made an inappropriate argument which the trial

court failed to curtail, or that the jury was misdirected by the allegedly biased court.  In effect,

defendant has not even claimed that the trial court's actions affected the fairness of the trial in

---

[14] *Carines, supra*, at 763.

9

which he was found guilty. The comments made by the trial court were made prior to trial and obviously outside of the presence of the jury, and reflected disappointment that defendant was again involved in the criminal justice system. Perhaps the comments while reasonable may have been inappropriate. However, despite his personal disappointment, the trial court conducted a fair trial in which defendant's actions were evaluated in light of the relevant law.

Defendant has failed to show error that warrants reversal.



RELIEF REQUESTED

*WHEREFORE*, the People pray that this Court affirm defendant's conviction.

Respectfully Submitted,

KYM L. WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research
Training and Appeals

FRANK J BERNACKI  P 26352
Assistant Prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit, Michigan  48226
Phone: (313) 224-5785

L:\b.jones10.27.wpd
Dated: October 28, 2004
FJB/lw

11